Members of the State Personnel Board, an agency of the State of Alabama ("the Board"), namely, Joe N. Dickson, John M. McMillan, Joyce P. O'Neal, and Ellen G. McNair, individually and in their official capacities ("the members"), seek a writ of mandamus directing the Montgomery Circuit Court to grant their motion to dismiss count VIII and count IX of the complaints of the Alabama State Employees Association ("the ASEA") and PEBCO, Inc., [1] in their actions against the members. We deny the petition.
 I. Background
This dispute essentially began on November 20, 2007, when Ruth Gwin and Sandra H. Turner, employees of the State of Alabama participating in a "tax deferred annuity and deferred compensation program[] for the salaried employees of the State of Alabama," adopted pursuant to Ala. Code 1975, § 36-26-14, and I.R.C. § 457 ("the 457 Plan"), filed a complaint in Jefferson County (case no. CV-07-04052) on behalf of themselves and a purported class of participants in the 457 Plan. Named as defendants in that action (hereinafter referred to as the "class action") were (1) Nationwide Life Insurance Company and Nationwide Retirement Solutions, Inc. (collectively "Nationwide"); (2) the ASEA; and (3) PEBCO.
According to the class-action complaint, the ASEA had contracted with Nationwide to be the service provider for the 457 Plan, that is, "to provide for the daily operation and investment of funds for the [457] Plan." It alleged that since approximately 2001 Nationwide had been paying kick-backs in the form of unauthorized commissions, expenses, and fees to the ASEA and/or PEBCO, thus benefiting them at the expense of the 457 Plan and its participants. The class-action complaint sought compensatory damages and punitive damages, as well as "disgorgement of amounts paid," based on theories of breach of fiduciary duty, wantonness, and breach of contract. It also sought declaratory and injunctive relief, "reformation of [457] Plan documents," and the "appointment of an independent fiduciary to protect Plan participants." On December 2, 2008, the plaintiffs moved for a preliminary injunction seeking to enjoin the ASEA and PEBCO from receiving any further periodic payments from Nationwide and to impose a trust on any such payments for the benefit of the participants in the 457 Plan.
On December 4, 2008, the Board moved to intervene as a plaintiff in the class action and filed a proposed complaint in intervention. The Board alleged that, in compliance with its statutory duties and responsibilities, it had adopted the 457 Plan as recommended by the ASEA but that it was uncertain as to what rights or obligations the Board had "in regards to the [457] Plan once adopted." Consequently, the Board sought a "judicial declaration of [its] authority" as to the 457 Plan as adopted. Specifically, the Board sought a judgment declaring that it is entitled:
 "(a) To copies of all documents in Defendants' possession that are related in *Page 470 
any way to the [457] Plan, as well as all other contracts and evidences of dealings and transactions related thereto.
 "(b) To a judicial declaration that neither the ASEA, Nationwide, nor any other person or entity who is a party to any document entered into that relate[s] in any way to the administration of the [457] Plan can withhold such documents from the Board under a guise of confidentiality or otherwise.
 "(c) To an unimpeded investigation of the allegations of wrongdoing in order to assess what action the Board needs to take in connection with the [457] Plan now or in the future.
 "(d) To obtain a judicial determination that the Board has a protectable public interest in the [457] Plan and in all contracts, undertakings and transactions related thereto.
 "(e) To a judicial declaration that the Board is entitled to conduct all reasonable inquiries and gather all documents/information that affect the administration of the [457] Plan.
 "(f) To a judicial declaration that the Board may terminate, reform, modify or amend the current [457] Plan and/or contracts, understandings and arrangements entered into in connection with its administration.
 "(g) To a judicial declaration that the Board is not required under 36-26-14(a) to adopt or renew any plan recommended by ASEA unless the Board has been provided sufficient documentation and other information to reasonably satisfy the Board that the Plan recommended is in the best interest of State Personnel and, to a determination that the Board may decline to adopt or renew a Plan recommended by ASEA if it reasonably believes doing so is in the best interest of State personnel.
 "(h) To a judicial declaration that once a Plan has been recommended by ASEA and adopted by the Board, the Board can upon reasonable grounds terminate, modify or limit the role of ASEA or other parties in the administration of the Plan.
 "(i) To such other relief the Board or the Court later deem to be appropriate."
The Jefferson Circuit Court granted the Board "provisional intervention" status to afford it the opportunity to "stay abreast of the current state of the litigation."
On April 9, 2009, the Jefferson Circuit Court held a hearing on the plaintiffs' motion for a preliminary injunction. All parties, including the Board, participated in the hearing. On April 28, 2009, the Jefferson Circuit Court entered an orderdenying the motion, stating: "It is clear that granting injunctive relief at the present time would be ruinous to [the ASEA] especially in light of the fact that class status has not [yet] been determined."
The next day, the Board — purporting to find authority in various sections of the 457 Plan — adopted an "Amendment to the State of Alabama Public Employees Deferred Compensation Plan for Public Employees" ("the amendment"). The amendment, among other things, expressly prohibited "interested persons," the definition of which included the ASEA and PEBCO, from "receiv[ing] any payment, compensation, or consideration of any kind, whether direct or indirect, relating in any way to the [457] Plan, its income or any asset held regarding the [457] Plan." Moreover, the amendment provided that every person "who engaged in a [prohibited] transaction" was to be "personally liable to make good to the [457] Plan any losses to the [457] Plan resulting from each such breach or transaction, and to restore to the [457] Plan any profits" accruing to such person. Finally, *Page 471 
the amendment purported to operate retroactively to January 1, 1997, pre-dating the contracts and agreements challenged in the class action.
Subsequently, the ASEA and PEBCO filed complaints on May 21, 2009 (case no. CV-09-804), and May 22, 2009 (case no. CV-09-812), respectively, in the Montgomery Circuit Court against the members who voted to adopt the amendment. The ASEA's complaint alleged that by passing the amendment the members had "inject[ed] themselves into issues already the subject of the class action; had "attempt[ed] to assert authority over matters in which they claimed to be unsure of their authority"; and had breached a duty to "refrain from taking any action in an attempt to influence or negate the court in such proceeding."[2] The complaints alleged due-process and equal-protection violations and impairment of contract as well as intentional interference with business/contractual relations and conspiracy, for which ASEA and PEBCO sought compensatory damages and punitive damages. They also sought declaratory and injunctive relief. More specifically, they sought "a permanent injunction . . .enjoining the enforcement of the Amendment and further enjoining any and all further acts of the [members] . . . to deny [the ASEA and PEBCO] . . . the exercise of [their] legal, contractual, and property rights, and business relationship with Nationwide." (Emphasis added.)[3] The first amended complaint of the ASEA stated:
 "Since the initial filing of this Complaint, [the members] have cancelled in its entirety the 457 Plan with Nationwide and have engaged in other conduct whereby they have intentionally . . . deprived, or sought to deprive and deny ASEA its rights under the Constitution of Alabama, and to intentionally interfere with ASEA's contracts, agreements, property rights and business relationship with Nationwide, and otherwise to injure and damage ASEA."
(Emphasis added.) Case no. CV-09-804 and case no. CV-09-812 were consolidated on July 6, 2009 (the consolidated action is hereinafter referred to as the "Montgomery action").
The members moved to dismiss the Montgomery action, asserting, among other things, various immunities. Without discussing the immunity issues, the Montgomery Circuit Court granted the motions on other grounds as to all claims except those seeking injunctive relief. The members then filed this petition seeking a writ of mandamus directing the Montgomery Circuit Court to dismiss the claims against them for injunctive relief on immunity grounds.
 II. Discussion
The denial of a motion to dismiss "`grounded on a claim of immunity'" is properly reviewable by a petition for a writ of mandamus. Ex parte Simpson, 36 So.3d 15, 22 (Ala. 2009). "A writ of mandamus is a drastic and extraordinary writ that will issue to compel a summary judgment on immunity grounds only upon a showing of a clear legal right in the petitioner to the immunity sought." 36 So.3d at 22. "The burden of establishing a clear legal right to the relief sought rests with the petitioner." Ex parte Metropolitan Prop. Cas. Ins.Co., 974 So.2d 967, 972 (Ala. 2007). The members rely on three types of immunity as grounds for the dismissal of the claims against them seeking *Page 472 
injunctive relief, namely, (1) absolute legislative immunity, (2) State immunity, and (3) State-agent immunity.
 A. Absolute Legislative Immunity
According to the members, "[p]ublic officers, in both their official capacity and individual capacity, are entitled to absolute legislative immunity in conjunction with the actions ofenacting local legislation." Petition, at 11 (emphasis added). "Moreover," they say, "legislative immunity not only bars actions seeking damages but also bars actions seeking declaratory or injunctive relief. Supreme Court of Virginiav. Consumers Union of the United States, Inc.,446 U.S. 719, 732 (1980)." Petition, at 13. Although these general statements of law are essentially correct, they miss the point of this dispute.
The question considered by the United States Supreme Court inSupreme Court of Virginia v. Consumers Union of the UnitedStates, Inc., 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641
(1980), was "whether the Supreme Court of Virginia (Virginia Court) and its chief justice [were] [absolutely] immune from suit in an action brought under 42 U.S.C. § 1983 challenging the Virginia Court's disciplinary rules governing the conduct of attorneys. . . ." 446 U.S. at 721, 100 S.Ct. 1967. In particular, the suit sought to permanently enjoin "theenforcement and operation of DR 2-102(A)(6)" of the Virginia Bar Code, which Code had been promulgated by the Virginia Supreme Court. 446 U.S. at 726, 100 S.Ct. 1967
(emphasis added). Although the United States Supreme Court acknowledged that the Virginia Supreme Court and its chief justice would, for "the issuance of, or failure to amend, the challenged rules," enjoy the same type of absolute, legislative immunity generally afforded state legislators,446 U.S. at 734, 100 S.Ct. 1967 (emphasis added), it noted that they were properly held "liable in their enforcement
capacities," and thus were "proper defendants in a suit for declaratory and injunctive relief." 446 U.S. at 736,100 S.Ct. 1967 (emphasis added). This was so, because the suit sought to enjoin the enforcement, not the promulgation, of DR 2-102(A)(6); because the Virginia Supreme Court and its chief justice exercised "inherent and statutoryenforcement powers"; and because "enforcementofficers and agencies" are amenable to suit for "declaratory and injunctive relief." 446 U.S. at 736,100 S.Ct 1967 (emphasis added).
In Ex parte Simpson, supra, we recently explained:
 "`[Legislative] immunity applies only to actions that are inherently legislative (policy-making) as opposed to administrative (policy-applying). Corn v. City of Lauderdale Lakes, 997 F.2d 1369 (11th Cir. 1993). Thus, applications
[emphasis in original] of general city policy to a specific party, even if undertaken by city officials who would be immune from suit for the creation [emphasis in original] of that policy, are not protected by legislative immunity. . . .
 "`. . . .
 "Grider v. City of Auburn, 628 F.Supp.2d 1322, 1336 (M.D.Ala. 2009) (emphasis added except where otherwise indicated). `Acts of zoning enforcement rather than rulemaking are not legislative.' Crymes v. DeKalb County, 923 F.2d 1482, 1485-86 (11th Cir. 1991) (emphasis added) (county commissioners who voted to deny a permit for the development of a landfill were not entitled to legislative immunity, because denial of the permit was the `application of policy to a specific party'); see also Front Royal Warren County Indus. Park Corp. v. Town of Front Royal, 865 F.2d 77, 79
(4th Cir. 1989) (when municipal officials *Page 473 
"do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement,"' they cannot claim legislative immunity)."
36 So.3d at 30.
The complaints in the Montgomery action out of which this petition arises merely seek to enjoin the "enforcement ofthe Amendment and . . . any and all further acts of the [members] . . . to deny [the ASEA and PEBCO] . . . the exercise of [their] legal, contractual, and property rights, and business relationship with Nationwide." (Emphasis added.) See also respondents' brief, at 10 ("ASEA and PEBCO therefore seek an injunction prohibiting the Amendment's enforcement"). Section 36-26-6(b), Ala. Code 1975, which sets forth the powers and duties of the Board, authorizes the Board:
 "(3) To make investigations, either on petition of a citizen, taxpayer or interested party, or of its own motion, concerning the enforcement
and effect of this article and to require observance of its provision in the rules and regulations made pursuant thereto;
 "(4) To conduct hearings and to render decisions, as provided in Section 36-26-27, [Ala. Code 1975,] on charges preferred against persons in the classified service;
 ". . .
 "(6) To consider and act on such matters as may be referred to the board by the director."
(Emphasis added.) Indeed, there is no dispute regarding the enforcement authority of the Board.
According to the ASEA and PEBCO, the Board has canceled the business relationship involving Nationwide, the ASEA, and PEBCO and similarly threatens to "deny ASEA the benefit and exercise of its legal, contractual and property rights and business relationships related to the 457 Plan." Respondents' brief, at 6. Elsewhere, they contend that the Board "purports to fundamentally change and, indeed, prohibit ASEA's involvement with the 457 Plan, contrary to § 36-26-14." Respondents' brief, at 9.
Thus, the issue here is not — as the members attempt to present it[4] — whether the Board in its purportedlegislative capacity could amend the 457 Plan without fear of legal reprisal but, instead, whether the members are immune in their enforcement capacities. Because the members' challenged acts involve only enforcement of the amendment, it is unnecessary to affirmatively decide whether they had absolute legislative immunity to enact the amendment in the first place.
Moreover, although the members rely on Supreme Court ofVirginia, they do so only for the proposition that legislative immunity bars actions for injunctive relief. They ignore that portion of the opinion holding that "enforcementofficers and agencies" are amenable to suit for "declaratory and injunctive relief." 446 U.S. at 736,100 S.Ct. 1967 (emphasis added). In fact, the members' argumentsentirely ignore the consequences of their enforcement actions on their immunity arguments. Consequently, they have failed to carry their burden of demonstrating a clear, legal right to relief on this ground.
 B. State Immunity
Next, the members argue that they are entitled to absolute immunity under Ala. Const. 1901, § 14, which provides "[t]hat the State of Alabama shall never be *Page 474 
made a defendant in any court of law or equity." It is well settled, however, that "[i]njunctive action may be maintained against a state official [in his official capacity], if the official is acting beyond the scope of his authority or acting illegally. . . ." St. Clair County v. Town ofRiverside, 272 Ala. 294, 296, 128 So.2d 333, 334 (1961). See also Alabama Dep't of Transp. v. Harbert Int'l,Inc., 990 So.2d 831, 839 (Ala. 2008); Wallace v. Boardof Educ. of Montgomery County, 280 Ala. 635, 640,197 So.2d 428, 432 (1967) (§ 14 does not prohibit actions to enjoin State officials from acting beyond their "lawful authority"). Whether the ASEA and PEBCO can prevail on the merits of this claim is not the issue. However, it is clear that § 14 does not bar a claim for injunctive relief under the posture of this case.
 C. State-Agent Immunity
Finally, the members contend that they are entitled to State-agent immunity as expressed in Ex parte Cranman,792 So.2d 392 (Ala. 2000). Although Cranman has no application to claims against State officials in their official capacities — and the members do not contend that it does — they do argue that the claim in PEBCO's
complaint for injunctive relief is asserted against them in their individual capacities. However, in that connection, the ASEA and PEBCO insist that the "sole remaining claim isagainst [the members] in their official/representativecapacities." Respondents' brief, at 24 (emphasis added). Actually, PEBCO's complaint does not identify the capacity in which the defendants are sued.
In any event, a suit for injunctive relief against a State official in his or her individual capacity would be meaningless. This is so, because State officials act for and represent the State only in their official capacities. Consequently, the members are not aided by Cranman or its progeny.
 III. Conclusion
In summary, the members have failed to establish a clear legal right to immunity under any of their espoused theories. Thus, they have not demonstrated that they are entitled to a writ of mandamus. The petition is, therefore, denied.
PETITION DENIED.
COBB, C.J., and LYONS, STUART, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.
SMITH, J., recuses herself.
[1] PEBCO is a subsidiary of the ASEA.
[2] This allegation is echoed in the complaint filed by PEBCO.
[3] This request for relief is stated in the ASEA's complaint; it does not differ substantively from the corresponding request for injunctive relief in PEBCO's complaint.
[4] According to the members, they are entitled to absolute legislative immunity because, they say, they "were performing a legislative function by voting as a Board on the Plan Amendment and were fulfilling their duties as Board members to cast a vote." Petition, at 17.