MURDOCK, Justice.
The City of Bessemer (“the City”) and Bessemer City Councillors Jimmy Stephens, Dorothy Davidson, Sarah W. Bel-cher, and Albert Soles (“the City council-lors”) petition this Court for a writ of mandamus directing the Jefferson Circuit Court to dismiss a claim alleging bad-faith failure to pay legal bills and costs stemming from a complaint filed by former City Councillor Louise Alexander and the law firm of White, Arnold & Dowd, P.C. (“WAD”). The City councillors also petition this Court to dismiss a racial-discrimination claim brought under 42 U.S.C. § 1983 and asserted in the same complaint. We grant in part and deny in part the petition for a writ of mandamus.

I. Facts and Procedural History

The plaintiffs allege that in 2006 and 2007 Alexander received three donations from a Tuscaloosa real-estate developer, which were properly used for charitable projects in Alexander’s district. During this same period, according to the complaint, two other City councillors, Davidson and Belcher, received similar donations from the same individual for charitable projects in their respective districts. According to the complaint, however, beginning in the early spring of 2007, plaintiff Alexander opposed several projects which the donor had proposed to the City and, therefore, the donor “vowed to retaliate against ... Alexander.” The complaint alleges that, because of the donor’s complaint to then Attorney General Troy King, a five-count indictment against Alexander was filed in August 2008 alleging violations of the Alabama Ethics Law, specifically Ala.Code 1975, § 36-25-5(a). That indictment essentially charged Alexander with *545 using her office to solicit funds and then using those funds for her personal gain. The complaint asserts that similar charges were not brought against City Councillors Davidson and Belcher.
WAD represented Alexander during her criminal proceedings. Alexander was ultimately acquitted.
Alexander and WAD allege that the City has a “policy and practice” of paying legal fees of city officials charged with crimes relating to the fulfilment of their official duties if and when they are found to be not guilty of those crimes. They assert that the most recent example of the City following this practice was the case of then City Councillor Betty Woods, who was charged with six counts of violating the Aabama Ethics Law, by using her office for personal gain and by soliciting things of value. According to Aexander and WAD’s complaint, in 2006, after Woods was found not guilty of the charges against her, the City paid her legal fees.[1]
WAD and Aexander allege that Aexan-der’s lead counsel, U.W. demon, appeared before the Bessemer City Council (“the City Council”) on May 26, 2009. Clemon presented the City Council with a bill for legal services rendered by WAD to date on Aexander’s behalf and requested that the City pay that bill. According to Aexander and WAD, in response to the presentation of the partial bill and request for its payment, the City attorney “represented that it was the policy and practice of the City to pay the legal expenses of a city official, but only after the official had been cleared of the charges.” Aexander and WAD further allege that, in reliance upon the City attorney’s representation and the fact of the City’s compliance with that policy and practice in the 2006 case involving Woods, WAD continued its work representing A-exander and deferred payments of its bills until such time as a successful outcome of the case might be achieved for Aexander. Aexander and WAD allege that the meeting concluded with all the City councillors aware of the “understanding that if and when Aexander was found not guilty, her counsel would be paid.”
Approximately eight months later, Aex-ander’s case proceeded to trial, and the jury acquitted Aexander on all charges.
On February 12, 2010, WAD submitted to the City Council a legal bill in the amount of $867,593.91. Councillor Stephens requested an advisory opinion from the general counsel of the Aabama Ethics Commission (“the Ethics Commission”) regarding whether the City could pay Aex-ander’s legal expenses. On April 7, 2010, the Ethics Commission issued an opinion in which it took the position that the City was legally prohibited from paying Aexan-der’s legal expenses.[2] See Aabama Ethics Commission Advisory Op. No. 2010-04. According to the minutes of the February 16, 2010, meeting of the City Council, Councillor Jesse Matthews “made a motion to pay the amount of $367,593.51 to the Law office of White Anold & Dowd, P.C. on behalf of Councillor Louise Aexander. The motion did not receive a second and therefore the motion died.”
*546 On February 18, 2010, an attorney with WAD sent the City attorney a revised bill that included time that had been inadvertently omitted from the previous bill, bringing the total amount of Alexander’s legal expenses to $373,348.91. At a City Council meeting on February 23, 2010, Councillor Matthews introduced a copy of an Ethics Commission advisory opinion dated March 5, 1997, which concluded that a public official charged with violating the Ethics Law and who was cleared of wrongdoing could not obtain reimbursement for legal expenses from the State because no proper corporate interest was involved. See Alabama Ethics Commission Advisory Op. No. 97-15. After summarizing the finding of the advisory opinion, Councillor Matthews stated that the “the payment of attorney fees will possibly have to be resolved in court.” According to the plaintiffs’ first amended complaint, the resolution to pay Alexander’s legal bill was on the agenda again for the City Council meeting held on March 2, 2010, but the resolution died for lack of a vote.
On March 16, 2010, Alexander and WAD sued the City and the City councillors, individually and in their official capacities,[3] in the Jefferson Circuit Court, alleging failure to pay Alexander’s legal expenses. On April 15, 2010, the City and the City councillors filed motions to dismiss the complaint. Alexander and WAD subsequently filed a first amended complaint in which they asserted the following claims: (1) arbitrary and capricious conduct based on the defendants’ alleged breach of a legal duty to pay Alexander’s legal bills arising from Art. I, § 2.1, Bessemer City Ordinances; (2) bad-faith and wanton failure to pay legal bills “with full knowledge that [Alexander’s] case meets all of the requirements of City of Montgomery v. Collins, 355 So.2d 1111 (Ala.1978)”; (3) failure to pay legal bills based on a mistaken interpretation of law through reliance on an erroneous advisory opinion of the Ethics Commission; (4) bad faith and unjust enrichment; (5) breach of an implied contract based on an alleged policy of the City that “when a councilor solicits and receives private funds for a project in his/ her district, and the donated funds are paid into the Department of Revenue, the councilperson will be reimbursed for the expenses of the project up to the amount of the donated funds”; (6) fraudulent conduct based on the City councillors’ telling Alexander’s counsel that WAD’s bill would be paid once the criminal case was over if Alexander was found not guilty; (7) a judgment declaring that the defendants willfully violated Art. I, § 2.1, Bessemer City Ordinances; and (8) various claims against fictitiously named defendants.
The City and the City councillors filed motions to dismiss the first amended complaint. On February 15, 2011, the trial court entered an order dismissing all the plaintiffs’ claims except counts two and five against the City. With respect to count two, the trial court’s order stated, in pertinent part:
“This count is based on [City of] Montgomery v. Collins, 355 So.2d 1111 (Ala. 1978). That case create[s] a cause of action in favor of a city employee against a city in certain limited circumstances. Although the factual allegations of the Count Two claim, if proven, would probably not be sufficient to defeat a motion for a summary judgment, the Court would not say that [Alexander and WAD] ... cannot prove any set of facts upon which relief may be granted.”
*547 Alexander and WAD subsequently filed their second amended complaint. In that complaint, the plaintiffs (1) sought in count one a judgment declaring that the defendants arbitrarily and capriciously and in violation of the City’s policies and practices failed to pay Alexander’s legal bills and asserted the following other claims in counts two through five: (2) bad-faith failure to pay legal bills and costs “with full knowledge that [Alexander’s] case meets all the requirements of City of Montgomery v. Collins, 355 So.2d 1111 (Ala.1978), and that the legal expenses of a similarly situated Bessemer councillor had been paid”; (3) bad-faith breach of an implied contract (comparable to count five of the first amended complaint); (4) fraud and suppression based on the allegation that the City attorney had misrepresented that Alexander’s legal bills would be paid provided she was found not guilty of violating the Ethics Law; and (5) racial discrimination based on the allegation that the City paid the legal bills of Councillor Woods, who faced similar criminal allegations, but refused to pay the legal bills of Alexander, with “[t]he difference between Plaintiff Alexander and her fellow Councillor [being] that Plaintiff Alexander is black, while Betty Woods is Caucasian.”
The City and the City councillors filed motions to dismiss the second amended complaint. Concerning the plaintiffs’ claim of racial discrimination based on § 1983, the City councillors contended that they were entitled to legislative immunity or to qualified immunity. Concerning the claim of bad-faith failure to pay legal expenses, the City contended that under § 11 — 47-190, Ala.Code 1975, a claim of bad faith could not be maintained against a municipality.
The trial court subsequently entered an order in which it dismissed all claims alleged in the plaintiffs’ second amended complaint with the exception of count two and count five. With respect to count two, in which the plaintiffs allege a bad-faith failure by the City to pay Alexander’s legal fees and costs, the trial court noted that this count was “substantially similar to the same claim” in the first amended complaint. Based on the grounds stated in the February 15, 2011, order, the trial court dismissed count two as to all the City councillors in their individual and official capacities, but it denied the motion to dismiss as to the City. With respect to count five, the § 1983 discrimination claim, the trial court stated that
“[c]ount Five of Plaintiffs’ amended complaint on its face states a claim for which relief might be granted, although the facts alleged to support the claim would not be sufficient to defeat a Motion for a Summary Judgment. For this reason, however, the Court at present denies the Defendants’ Motions to dismiss Count Five, to allow Plaintiffs to conduct discovery.”
The City and the City councillors petition this Court to direct the trial court to dismiss the bad-faith claim against the City,[4] and the City councillors petition this Court to direct the trial court to dismiss the racial-discrimination claim against them on the basis of immunity.

II. Standard of Review

“The denial of a motion to dismiss ‘ “grounded on a claim of immunity” ’ is properly reviewable by a petition for a writ of mandamus. Ex parte Simpson, 36 So.3d 15, 22 (Ala.2009). ‘A writ of mandamus is a drastic and ex- ■ traordinary writ that will issue to compel a summary judgment on immunity *548 grounds only upon a showing of a clear legal right in the petitioner to the immunity sought.’ 36 So.3d at 22. ‘The burden of establishing a clear legal right to the relief sought rests with the petitioner.’ Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 972 (Ala. 2007).”
Ex parte Dickson, 46 So.3d 468, 471 (Ala. 2010).

III. Analysis

A. Preliminary Observations

Alexander and WAD contend that the trial court correctly refused to dismiss the bad-faith claim against the City and the § 1983 claims against the City councillors because, they say, a further exploration, outside the pleadings, of facts pertaining to the motivations of the defendants is necessary in order to assess the immunity claims asserted by the City and the City councillors, respectively. The immunity at issue as to the so-called bad-faith claim against the City is that of local-governmental immunity against tort actions. See discussion, infra. Motivation on the part of a municipal government, however, plays no part in the application of the principle of local-governmental immunity.
As to the § 1983 claims against the City councillors, the first type of potential immunity we address is “legislative immunity.” As is true with local-governmental immunity, however, the question of the defendants’ motivation is not pertinent to the issue whether the defendants are entitled to legislative immunity. Bogan v. Scottr-Harris, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (“Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.”); Ellis v. Coffee Cnty. Bd. of Registrars, 981 F.2d 1185, 1191 (11th Cir.1993) (observing that “an unworthy purpose does not remove absolute immunity protection from legislators acting in their legislative capacity”).
If it is determined, however, that legislative immunity is not available to the City councillors in response to the § 1983 claims against them, then the issue that will remain will be whether those City councillors are entitled to so-called “qualified immunity” under federal law. As discussed subsequently, an examination into the availability of qualified immunity for the City councillors in this case will, unlike the issue of legislative immunity, require an exploration of the facts regarding the motivation of the City councillors for declining to vote in favor paying Alexander’s legal expenses. This, in turn, will require an examination of material outside the pleadings. Indeed, the City councillors themselves admit that “the qualified immunity inquiry is fact specific.”[5] Therefore, if legislative immunity is not available to the City councillors and a determination must be made as to whether the City councillors are entitled to qualified immunity for the § 1983 racial-discrimination claims against them, then the petition of *549 the City councillors is due to be denied to allow for further proceedings before the trial court.

B. Plaintiffs’ Claim of Bad-Faith Failure to Pay Legal Expenses

At the outset, we note that, although the parties discuss the cognizability under Alabama law of the plaintiffs’ bad-faith claim in light of this Court’s decision in City of Montgomery v. Collins, 855 So.2d 1111 (Ala.1978), we do not address that issue. “ ‘Subject to certain narrow exceptions, we have held that, because an “adequate remedy” exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus.’ ” Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d 959, 966 (Ala.2011) (quoting Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761-62 (Ala.2002)). One of the few “narrow exceptions” we have recognized to the aforesaid general rule is a petition for a writ of mandamus complaining of the denial of a motion to dismiss grounded on a claim of immunity. Ex parte Dickson, 46 So.3d 468, 471 (Ala.2010) (citing Ex parte Simpson, 36 So.3d 15, 22 (Ala.2009)). Accordingly, we limit our review of the claim of bad-faith failure to pay legal fees and expenses to an examination of whether the City is immune from such a suit, leaving aside any questions as to the legal or factual merits of that claim.
The claim as alleged by Alexander and WAD appears to be in the nature of a tort claim.[6] Alabama law has long embraced the common-law doctrine of local-governmental immunity applicable to tort actions against municipalities and counties. Indeed, this Court has explained that the doctrine predates, but survived, the adoption of the 1901 Constitution. Gamer v. Covington Cnty., 624 So.2d 1346 (Ala. 1993); Home Indem. Co. v. Anders, 459 So.2d 836 (Ala.1984). It is a doctrine designed to protect local governments and their coffers. See, e.g., Smith v. Schulte, 671 So.2d 1334, 1343-44 (Ala.l995)(abro-gated on other grounds, Ex parte Apicella, 809 So.2d 865 (Ala.2001)); Gamer, 624 So.2d at 1351. Because it was in fact a common-law doctrine and not created by the constitution, it was and is subject to modification by the legislature. Smith v. Schulte, supra (recognizing “the unique status” of counties and cities that enables the legislature to regulate their tort liability); Gamer, 624 So.2d at 1351.[7] Our legislature has chosen to exercise that control with the enactment, among other statutes, of § 11-47-190,[8] and its predecessors dat *550 ing back to soon after the adoption of the 1901 Constitution and the debates over municipal liability that occurred at the constitutional convention. See Gamer, 624 So.2d at 1351-54 (quoting at length the convention debate regarding municipal-governmental liability and the ability of the legislature to abrogate it as it might see fit in the future); see also generally Suttles v. Roy, 75 So.3d 90 (Ala.2010) (reading §§ 11-47-190, 11-47-24, and 11-93-2 in pari materia); Anders, supra (reading §§ 11-47-190 and 11-93-2 in pari materia). Nothing in § 11 — 47-190, however, creates an exception to the doctrine of local-governmental immunity applicable in the present case.
Specifically, § 11-47-190 creates an exception to the general rule of immunity for municipalities (“[n]o city or town shall be liable ... unless”) when a plaintiff has suffered injury as a result of “the neglect, carelessness or unskillfulness” of some agent, or when the plaintiff suffers injury as a result of the “neglect or carelessness or failure to remedy some defect” in public works caused by a third party. Neither of those clauses creates any exception to the general rule of municipal immunity from liability in the case of intentional or malicious actions by the agents or officers of the municipality. Indeed, Alexander and WAD do not contest the position of the petitioners that the exceptions to local-governmental immunity described in § 11-47-190 are not applicable here. (Alexander and WAD concede that the bad-faith claim they seek to assert against the City is in the nature of an intentional tort.) Therefore, the trial court should have dismissed this claim against the City, and, accordingly, we grant the petition in this regard.

C. Plaintiffs’ Claim of Racial Discrimination under § 1983

In count five of the second amended complaint, the plaintiffs claimed that the City and the City councillors violated Alexander’s constitutional rights by refusing to pay her legal expenses when the City previously had paid the legal expenses of a similarly situated City councillor, Betty Woods. The plaintiffs claimed that the only difference between Woods and Alexander was that Woods is Caucasian and Alexander is African-American. Thus, the plaintiffs claimed that the City and the City councillors intentionally discriminated against Alexander in refusing to pay her legal expenses, a violation of Alexander’s constitutional right to equal protection under the law, a right enforceable under 42 U.S.C. § 1983.
In its July 31, 2011, order, the trial court denied the petitioners’ motions to dismiss count five of the complaint, concluding that “[c]ount Five of Plaintiffs’ amended complaint on its face states a claim for which relief might be granted.... ”
The City councillors challenge the trial court’s refusal to grant their motion to dismiss, contending that, under federal law, they are entitled either to legislative immunity or to qualified immunity for *551 their action of refusing to vote for a resolution to pay Alexander’s legal expenses.[9]
Concerning legislative immunity, this Court has explained:
“Section 1983 provides a remedy for persons alleging deprivations of their constitutional rights by government officials through action taken ‘under color of state law.’ Notwithstanding the unqualified nature of its language, however, § 1983 was not intended to abrogate the common law immunities enjoyed by persons performing certain governmental functions. Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). It is now well settled that government officials performing legislative functions at the state level are entitled to absolute immunity from suits for damages under § 1983. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). State legislators ‘require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability.’ 457 U.S. at 806, 102 S.Ct. at 2732. Likewise, in Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the United States Supreme Court held that the members of a ‘regional’ land planning agency performing legislative functions were entitled to absolute immunity from the plaintiffs § 1983 action and, although expressly reserving the question for a later date, strongly suggested that government officials performing legislative functions at the municipal level are also entitled to absolute immunity from § 1983 claims.”
Point Props., Inc. v. Anderson, 584 So.2d 1332, 1335-36 (Ala.1991). Since our decision in Point Properties, the United States Supreme Court has explicitly concluded that “[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities.” Bogan, 523 U.S. at 54.
If what we had before us was the adoption of a resolution or an ordinance whereby the City councillors established a new policy for the City of not paying legal fees and expenses of City officials charged with crimes regardless of the outcome of the trial of those charges, the individual City councillors might well enjoy legislative immunity for their action in voting for such a policy or declining to vote in favor of such a policy. As the United States Court of Appeals for the First Circuit explained:
“We find persuasive the analysis in Developments in the Law-Zoning, 91 Harv. L. Rev. 1427, 1510-11 (1978), which suggests two tests for distinguishing between legislative and administrative activity. The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are ‘legislative facts’, such as ‘generalizations concerning a policy or state of affairs’, then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the ‘particularity of the impact of the state of action’. If the action involves establishment of a gener *552 al policy, it is legislative; if the action ‘single[s] out specifiable individuals and affect[s] them differently from others’, it is administrative. Measured by either of these tests, it is clear that the Planning Boards rejection of the developer’s mortgage in this case was an administrative act.”
Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir.1984).
Similarly, in Hughes v. Tarrant County, Texas, 948 F.2d 918, 921 (5th Cir.1991), the United States Court of Appeals for the Fifth Circuit cited Cutting with approval and applied the test articulated therein:
“Even though the decision concerned the allocation of county monies, it was not based on legislative facts; it was not based on general facts regarding any policy, but instead, it was based on specific facts of an individual situation related to the district court clerk. Furthermore, the action did not purport to establish a general policy; it was particular to Hughes. Because we find that the challenged conduct was not legislative, we hold that the commissioners are not entitled to absolute legislative immunity.”
See also, e.g., Associated Press v. Cook, 17 S.W.3d 447, 460 (Tex.App.2000) (applying the same test applied in Hughes).
Insofar as an examination of the issue of legislative immunity is concerned, however, the petitioners do not argue in their brief to this Court that the decision concerning the allocation of moneys in this case was based on any “legislative facts” or the “establishment of a general policy.” Instead, insofar as the specific issue of legislative immunity is concerned, the arguments presented in the petitioners’ brief in the present case focus solely on the fact that the decision was one that would impact the City’s coffers. The mere fact that a potentially discriminatory decision is made through an exercise of control over the public purse does not insulate the entity making that decision from a claim that the action is administrative in nature. E.g., Trevino v. Gates, 23 F.3d 1480 (9th Cir.1994); Hughes; O’Brien v. City of Greers Ferry, 873 F.2d 1115 (8th Cir.1989) (holding that a failure to approve an expenditure of money is not necessarily a legislative act).
The United States Court of Appeals for the Ninth Circuit explained in Trevino that
“[t]he burden of proof in establishing absolute immunity is on the individual asserting it. ‘[0]fficials seeking absolute immunity must show that such immunity is justified for the governmental function at issue.’ Hafer v. Melo, 502 U.S. 21, 29, 112 S.Ct. 358, 363, 116 L.Ed.2d 301 (1991) (citing Bums v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)).”
23 F.3d at 1482. Because the petition before us argues only that decisions regarding the expenditure of money are necessarily entitled to legislative immunity and does not argue that the decision to refuse payment of Alexander’s legal expenses was in fact based on “legislative facts” or was a reflection of the establishment of a new “general policy,” the petitioners have not here demonstrated a right to relief on the ground of legislative immunity.
Finally, we turn to the petitioners’ request for relief on the basis of “qualified” or “good-faith” immunity. “[Qualified or ‘good faith’ immunity has been extended to government officials performing discretionary functions that are characteristically executive or administrative.” Point Props., Inc., 584 So.2d at 1338.
“ ‘[Qualified immunity protects government officials performing discretionary functions from the burdens of civil trials *553 and from liability,’ McMillian v. Johnson, 88 F.3d 1554, 1562 (llth Cir.1996) (citing Lassiter v. Alabama A & M Univ., 28 F.3d 1146,1149 (llth Cir.1994) (en banc)), ‘[i]n all but exceptional cases.’ Id. It is only “when an official’s conduct violates “clearly established statutory or constitutional rights of which a reasonable person would have known’” that ‘the official is not protected by qualified immunity.’ Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818,102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).”
Rioux v. City of Atlanta, Ga., 520 F.3d 1269,1282 (llth Cir.2008).
As it relates to the claims against the City councillors in the present case, we note that the Equal Protection Clause “ensures the right to be free from intentional discrimination based on race.” Id. (citing Williams v. Consolidated City of Jacksonville, 341 F.3d 1261, 1268 (llth Cir.2003)). We also observe that
“[c]learly established law provides that state officials ‘can be motivated, in part, by a dislike or hostility toward a certain protected class to which a citizen belongs and still act lawfully .... ’ ‘[S]tate officials act lawfully despite having discriminatory intent, where the record shows they would have acted as they, in fact, did act even if they had lacked discriminatory intent.’ ”
Id. at 1283 (quoting Foy v. Holston, 94 F.3d at 1534, and Mt. Healthy v. Doyle, 429 U.S. 274, 286-87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and citing Village of Arlington Heights v. Metropolitan Hous. Dev., 429 U.S. 252, 269-71 n. 21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)). The question has also been framed as whether the defendants “had adequate lawful reasons to support [the] decision” in question. Id.
Accordingly, as noted in Part A above, the fact-specific nature of a qualified-immunity analysis (an analysis typically requiring an examination of evidence outside the pleadings, evidence of a type the trial court did not in fact examine in the present case) means that the issue presented is, as a general rule, better analyzed within the framework of a summary-judgment motion rather than within that of a motion to dismiss. As has already been noted, the City councillors concede that “the qualified immunity inquiry is fact-specific.”
Based on the foregoing, we conclude that the City councillors have not demonstrated in this proceeding that they are entitled to relief on the basis of qualified immunity.

IV. Conclusion

We grant the petition as it relates to the bad-faith claim alleged against the City. Because the City enjoys governmental immunity from such a claim, we direct the trial court to dismiss that claim.
We deny the petition with regard to the plaintiffs’ claim against the City councillors of racial discrimination brought pursuant to § 1983. The City councillors have not here demonstrated an entitlement to legislative immunity as discussed above, and whether they are entitled to qualified immunity is a question that would require further consideration of facts outside the pleadings.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
STUART, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., concurs in part and dissents in part.

. Alexander and WAD also note that Woods is Caucasian and that Alexander is African-American. In response, the City and the City councillors observe that at the time the Bessemer City Council made its decision not to pay Alexander’s legal expenses, six of the seven City councillors were African-Americans.

. The plaintiffs note that the advisory opinion was written by the same general counsel of the Ethics Commission who testified against Alexander in her criminal trial. The plaintiffs state that they have filed a separate action against the Ethics Commission seeking to have the advisory opinion set aside on the ground that it was biased.

. The plaintiffs state that City councillors Earl Cochran and Matthews were listed as nominal defendants because they had indicated support for reimbursing Alexander's legal expenses.

. It is unclear why the City councillors are included in the petition challenging the bad-faith claim given that the trial court expressly dismissed that claim as to them.

. In arguing that they are clothed with qualified immunity, the City councillors cite the minutes of the relevant City Council meetings, the text of Art. I, § 2, Bessemer City Ordinances, and advisory opinions written by the Ethics Commission and the Office of the Alabama Attorney General. Considering these materials in making a determination as to whether the City councillors are entitled to qualified immunity necessarily would require converting the motion to dismiss into a motion for a summary judgment because "[i]f the trial court considers matters outside the pleadings, then the motion should be treated as a motion for summary judgment.” Stock-man v. Echlin, Inc., 604 So.2d 393, 394 (Ala. 1992). It is apparent from the language of the trial court's orders that it did not consider outside materials in reaching its decision.

. Cf. Chavers v. National Sec. Fire & Cas. Co., 405 So.2d 1 (Ala.1981) (recognizing the intentional tort of bad faith in first-party insurance actions). The claim of a breach of an implied contract as alleged by Alexander and WAD in their first amended complaint, but dismissed by the trial court, is not at issue here.

. In Gamer, this Court took note of the unique status of cities and counties:
"Garner’s argument that § 11-93-2 violates § 11[, Ala. Const. 1901,] must be addressed in the context of the unique status of counties and cities as governmental entities. Because they are creations of the sovereign, the State of Alabama, and because they exercise certain governmental functions that are dependent upon tax dollars, actions against them have always been subject to reasonable regulation by the legislature on a basis not applicable to actions against individuals and other entities.”
624 So.2d at 1351.

.Section 11-47-190 provides, in pertinent part:
“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or *550 suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured.”
(Emphasis added.)

. Presumably the City has not challenged the trial court's order on either of these grounds because "[qlualified official immunity and absolute legislative immunity are doctrines that protect individuals acting within the bounds of their official duties, not the governing bodies on which they serve.” Minton v. St. Bernard Parish Sch. Bd„ 803 F.2d 129, 133 (5th Cir.1986).