Rel: January 10, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0473

————————————————

**Ex parte Bobby Scott, Roger A. Barlow, and D.M. Collins**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Atlas Rental Property, LLC, et al.**

**v.**

**City of Center Point et al.)**

**(Jefferson Circuit Court: CV-22-900072)**

BRYAN, Justice.

Bobby Scott, the mayor of the City of Center Point ("the city"); Roger A. Barlow, the former council president of the city; and D.M. Collins, the current council president of the city (collectively referred to as "the city officials") petition this Court for a writ of mandamus directing the Jefferson Circuit Court to dismiss claims filed against them based on allegations that they participated in enacting a city ordinance. Because the city officials are entitled to legislative immunity, we grant their petition.

## I. Facts

The only facts before us are those alleged in the "Second Amended Verified Class Action Complaint" ("the second amended complaint"). On August 8, 2019, the city enacted Ordinance No. 2019-11 ("the ordinance"). According to the ordinance, its purpose was "to implement the policy of the Council to require owners, landlords, tenants, and roomers to maintain and improve the quality and appearance of rental housing in the City and to protect the health and safety of persons." The ordinance required an owner of rental residential property to obtain a certificate of occupancy before a tenant could occupy the property. The ordinance required the owner to obtain a new certificate every 12 months or each

2

time the rental property became vacant. The ordinance provided that certificates of occupancy would be issued upon inspection, and it imposed a $50 inspection fee.

On January 7, 2022, Atlas Rental Property, LLC ("Atlas"), and Spartan Invest, LLC ("Spartan"), both owners of rental residential property located within the geographical limits of the city, commenced a class action against the city. In their complaint, Atlas and Spartan alleged that the ordinance violated § 35-9A-121, Ala. Code 1975. That statute generally prohibits counties and municipalities from enacting local ordinances "relative to residential landlords, rental housing codes, or the rights and obligations governing residential landlord and tenant relationships." Nevertheless, it provides that counties and municipalities "may enact and enforce building codes, health codes, and other general laws that affect rental property provided that such codes equally affect similarly situated owner-occupied residential property." Id. (emphasis added). Atlas and Spartan alleged that the ordinance violated that statute because, they said, the ordinance did not apply equally to rental residential property and owner-occupied residential property. Atlas and Spartan requested damages, as well as injunctive

3

and declarative relief. On January 14, 2022, the circuit court entered a temporary restraining order prohibiting the city from enforcing the ordinance. Thereafter, on February 3, 2022, the circuit court entered a preliminary injunction to the same effect.

On September 7, 2023, the city repealed the ordinance. Thereafter, on October 11, 2023, Atlas, Spartan, Barrington Real Estate, Inc., and Ira Franklin (collectively referred to as "the landlords") filed an amended class-action complaint against the city. After the city answered that complaint, the circuit court ordered the landlords to amend their complaint.

On May 24, 2024, the landlords filed the second amended complaint. In the second amended complaint, the landlords added the city officials as defendants, and they asserted claims against them "in their individual as well as their representative capacities." The landlords again alleged that the ordinance violated § 35-9A-121. The only allegations in the second amended complaint regarding the city officials were as follows:

> "33. [The city], and the [city officials], were aware of [the landlords'] businesses and the nature of such businesses.

"34. None of the Defendants were a party to the business and/or contractual relationship between [the landlords] and putative Class members, nor were Defendants an agent or related to [the landlords] or Class members, nor had a financial stake in whether a rental agreement was consummated between the parties.

"35. The effect of Defendants' <u>enactment of the Ordinance</u>, disrupted or interfered with the business and/or contractual relationship.

"36. Defendants owed duties to the public and to [the landlords] including, but not limited to, the duty to faithfully and honestly fulfill the obligations of their office.

"37. [The landlords] and putative Class members were harmed by Defendants' unlawful and wanton conduct.

"38. As a result of Defendants' conduct, [the landlords] and the putative Class have suffered ascertainable damages, including:

"a. costs of complying with the Ordinance and lost profits;

"b. incidental and consequential losses caused by interference;

"c. actual harm to [the landlords'] and the putative Class's reputations that resulted from the interference; and

"d. punitive damages.

"....

5

"46. As a result of Defendants' <u>enactment of the Ordinance</u>, [the landlords] and the putative Class suffered damages, including:

"a. costs of complying with the Ordinance and lost profits;

"b. incidental and consequential losses caused by interference;

"c. actual harm to [the landlords'] and the putative Class's reputations that resulted from the interference; and

"d. punitive damages."

(Emphasis added.) The only specific conduct that the landlords alleged against the city officials was the "enactment of the Ordinance." All other specific allegations were against the city, not against the defendants collectively or the city officials specifically. In addition, the landlords dropped their request for injunctive relief.

On June 20, 2024, the city officials moved to dismiss the second amended complaint as to them. The city officials argued that the landlords' claims against them in their official capacities were due to be dismissed because those claims were duplicative of the landlords' claims against the city. The city officials also argued that the landlords' claims against them in their individual capacities were barred by the doctrines

6

of legislative immunity and State-agent immunity. In response, the landlords argued that the city officials' motion to dismiss was premature because discovery had not been completed and that more discovery was needed regarding the exceptions to State-agent immunity. The landlords did not respond to the city officials' claim of legislative immunity regarding the landlords' individual-capacity claims. They also did not respond to the city officials' argument that the landlords' official-capacity claims were duplicative of their claims against the city.

On July 2, 2024, the circuit court held a hearing on the city officials' motion to dismiss. The same day, the circuit court denied the city officials' motion to dismiss the landlords' claims against them. The city officials petitioned this Court for a writ of mandamus directing the circuit court to vacate its order denying their motion to dismiss and to enter an order dismissing the landlords' claims against them.

## II. Standard of Review

"The denial of a motion to dismiss '"grounded on a claim of immunity"' is properly reviewable by a petition for a writ of mandamus." Ex parte Dickson, 46 So. 3d 468, 471 (Ala. 2010) (citations omitted). Further,

7

"'[a] writ of mandamus is an extraordinary remedy, and it will be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court."'"

Ex parte City of Huntsville, [Ms. SC-2023-0150, Mar. 15, 2024] ___ So. 3d ___, ___ (Ala. 2024) (citations omitted).

## III. Analysis

In their petition, the city officials contend that they have a clear legal right to have the landlords' claims against them dismissed under the doctrine of legislative immunity. In the alternative, they contend that they have a clear legal right to have those claims dismissed under the doctrine of State-agent immunity. The city officials assert those arguments with regard to both the landlords' official-capacity and individual-capacity claims. We address the city officials' arguments regarding each type of claim separately.

## A. Official-capacity claims

As noted above, in the city officials' motion to dismiss, they argued that the landlords' claims against them in their official capacities were due to be dismissed because, they said, those claims were duplicative of the landlords' claims against the city. The city officials do not assert that

argument in their mandamus petition. Accordingly, they have abandoned that argument before this Court. Ex parte Drury Hotels Co., 303 So. 3d 1188, 1193 (Ala. 2020) ("'"[N]o matter will be considered on appeal [or mandamus review] unless presented and argued in brief."'" (citations omitted)).

Instead, the city officials argue that the landlords' official-capacity claims, as well as their individual-capacity claims, are barred by legislative and State-agent immunity. But the city officials failed to assert either type of immunity as a basis for the dismissal of the landlords' official-capacity claims in either their motion to dismiss or in their reply to the landlords' response to their motion to dismiss.[1] Thus, regardless of the merits of the city officials' contention that legislative and State-agent immunity bar the landlords' official-capacity claims, they do not demonstrate that the circuit court refused to dismiss those

---

[1]The circuit court's order denying the city officials' motion to dismiss reflects that the circuit court held a hearing on the motion and heard extensive oral argument at the hearing. However, a transcript of that hearing is not included in the exhibits to the mandamus petition. A mandamus petitioner has the responsibility of supplying this Court with the parts of the record that are essential to an understanding of the issues set forth in the mandamus petition. Ex parte A.H.R., [Ms. CL-2024-0024, May 24, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024).

claims on either basis.[2]  As noted above, the refusal to perform an imperative duty is an essential element for mandamus relief.  Because the city officials have not demonstrated such a refusal, they have not demonstrated that they are entitled to the relief they seek regarding the landlords' official-capacity claims.

## B. Individual-capacity claims

With regard to the landlords' individual-capacity claims, the city officials' argument that they are entitled to legislative immunity is dispositive.  In Peebles v. Mooresville Town Council, 985 So. 2d 388, 398 (Ala. 2007), this Court noted that "legislative immunity is well established and universal in nearly every state."  This Court noted that Alabama's common-law doctrine of legislative immunity is consistent

---

[2]State-agent immunity is an affirmative defense.  Alabama State Univ. v. Danley, 212 So. 3d 112, 131 (Ala. 2016).  As such, State-agent immunity, unlike State immunity, can be waived.  McGilvray v. Perkins, [Ms. SC-2023-0966, June 21, 2024] ___ So. 3d ___, ___ n.2 (Ala. 2024).  This Court has not directly addressed whether legislative immunity can be waived.  However, the city officials have not presented us with any argument that legislative immunity is jurisdictional and may not be waived, and we are aware of no precedent of this Court so holding. Under these circumstances, we conclude that the city officials have failed to demonstrate a clear legal right to a dismissal of the landlords' official-capacity claims based on the notion that legislative immunity is a jurisdictional issue that cannot be waived.  See Ex parte Jones, [Ms. SC-2023-0812, Sept. 27, 2024] ___ So. 3d ___ (Ala. 2024).

with that of the Restatement (Second) of Torts, which states that "'"[a] public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function."'" Id. (quoting Tutwiler Drug Co. v. City of Birmingham, 418 So. 2d 102, 105 (Ala. 1982), quoting in turn Restatement (Second) of Torts § 895D (Am. L. Inst. 1974)) (emphasis omitted). Legislative immunity is absolute, and it applies regardless of whether the motives of the legislator were pure or not. Id. Further, this Court has held that enacting a municipal ordinance is a legislative function. Ex parte Finley, 246 Ala. 218, 220, 20 So. 2d 98, 100 (1944).

Here, the only specific conduct attributed to the city officials in the landlords' second amended complaint as the basis of the landlords' claims against them was the "enactment of the Ordinance." Because the city officials' alleged conduct was a legislative function, they are entitled to legislative immunity from all claims asserted against them in their individual capacities based on that conduct.

The landlords assert several arguments regarding why, they say, the city officials were not entitled to a dismissal of the individual-capacity claims against them based on legislative immunity. First, they contend

that a dismissal would be premature. According to the landlords, a dismissal based on legislative immunity would be premature because they alleged in the second amended complaint not only that the city officials enacted the ordinance, but also that they enforced the ordinance against them. In support of that assertion, they point to paragraphs 21, 23-24, 33, and 35-37 of the second amended complaint. The landlords' contention is belied by the second amended complaint itself. Paragraphs 21 and 23-24 referred only to the city; they made no mention whatsoever of the city officials. As set forth above, the only paragraphs of the second amended complaint that referred to either the city officials specifically or to both the city officials and the city collectively were paragraphs 33-38 and 46. None of those paragraphs alleged specific conduct that could be classified as enforcing the ordinance. Accordingly, the factual basis of the landlords' argument that a dismissal would be premature is incorrect.

The landlords also argue that a dismissal would be premature because, they say, immunity determinations should be reserved for summary judgment once discovery has been completed. In support of that argument, the landlords rely on the following proposition:

> "[A] motion to dismiss is typically not the appropriate vehicle
> by which to assert qualified immunity or State-agent

> immunity[,] and … normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery. '"[I]t is the rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6), [Ala. R. Civ. P.]."' Ex parte Butts, 775 So. 2d [173,] 177 [(Ala. 2000)], quoting Patton v. Black, 646 So. 2d 8, 10 (Ala. 1994) (quoting earlier cases)."

Ex parte Alabama Dep't of Mental Health & Mental Retardation, 837 So. 2d 808, 813-14 (Ala. 2002).

Alabama Department of Mental Health correctly states that a dismissal is rarely appropriate when State-agent immunity is asserted. That is the case because the exceptions to State-agent immunity, particularly those that require inquiry into the State agent's motives, are fact-intensive. However, the city officials asserted legislative immunity, which does not have fact-intensive exceptions and as to which motive is irrelevant. Ex parte City of Bessemer, 142 So. 3d 543, 548 (Ala. 2013) ("[T]he question of the defendants' motivation is not pertinent to the issue whether the defendants are entitled to legislative immunity."). In City of Bessemer, this Court distinguished legislative immunity from federal qualified immunity, which, like State-agent immunity sometimes does, requires a fact-intensive inquiry into motives:

"If it is determined … that legislative immunity is not available to the City councillors in response to the § 1983 claims against them, then the issue that will remain will be whether those City councillors are entitled to so-called 'qualified immunity' under federal law. As discussed subsequently, <u>an examination into the availability of qualified immunity for the City councillors in this case will, unlike the issue of legislative immunity, require an exploration of the facts regarding the motivation of the City councillors</u> for declining to vote in favor [of] paying Alexander's legal expenses. <u>This, in turn, will require an examination of material outside the pleadings</u>. Indeed, the City councillors themselves admit that 'the qualified immunity inquiry is fact specific.'"

<u>Id.</u> (emphasis added).

Because the issue of qualified immunity required a fact-intensive inquiry into the motives of the defendants in <u>City of Bessemer</u>, this Court concluded that a dismissal on that basis was premature. In doing so, this Court implied that a dismissal would have been proper had <u>legislative</u> immunity been available. This Court concluded:

"Therefore, <u>if legislative immunity is not available</u> to the City councillors and a determination must be made as to whether the City councillors are entitled to qualified immunity for the § 1983 racial-discrimination claims against them, then the petition of the City councillors is due to be denied to allow for further proceedings before the trial court."

<u>City of Bessemer</u>, 142 So. 3d at 548-49 (emphasis added).

Consistent with City of Bessemer's rationale, this Court has both affirmed the dismissal of claims based on legislative immunity and issued writs of mandamus requiring the dismissal of claims based on legislative immunity. See, e.g., Gibson v. City of Alexander City, 779 So. 2d 1153, 1156 (Ala. 2000) (affirming dismissal of claims against city officials based on legislative immunity); and Ex parte City of Birmingham, 624 So. 2d 1018 (Ala. 1993) (issuing writ of mandamus requiring a trial court to dismiss an action against mayor and city-council members based on legislative immunity). Conversely, we have reversed the dismissal of claims based on legislative immunity if the plaintiff alleged conduct that was not a legislative function. See Hillman v. Yarbrough, 936 So. 2d 1056 (Ala. 2006) (reversing dismissal of claim against county officials because plaintiff alleged that county officials' conduct was not a legislative function).

For these reasons, a dismissal of claims based on legislative immunity is appropriate if the only conduct alleged against a defendant falls within a legislative function. As discussed above, the only specific conduct alleged against the city officials here was the enactment of the ordinance, which was clearly a legislative function. Accordingly, the

dismissal of the landlords' individual-capacity claims against the city officials is not premature.

Finally, the landlords contend that legislative immunity does not apply because, they say, their claims against the city officials would not affect a contract or property right of the State. In support of that argument, the landlords rely on Ex parte Moulton, 116 So. 3d 1119 (Ala. 2013), in which this Court defined an "action against the State" for purposes of State immunity under Article I, § 14, of the Alabama Constitution as one in which "'"'a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff's recovery of money from the [S]tate.'"'" 116 So. 3d at 1132 (citations and emphasis omitted). See also Ex parte Pinkard, 373 So. 3d 192 (Ala. 2022) (holding that an individual-capacity claim is not a claim against the State for purposes of State immunity if the claim does not seek relief from the State).

However, legislative immunity is not based on § 14. Rather, it is a common-law immunity doctrine. See Tutwiler Drug Co., 418 So. 2d at 104-05 (distinguishing between State immunity under § 14 and the common-law doctrine of "substantive immunity," which includes

16

legislative immunity). Unlike State immunity, legislative immunity is not limited to claims that are, in effect, claims against the State of Alabama. Rather, legislative immunity bars claims asserted against State or local officials engaged in a legislative function, without regard to whether those claims are asserted against a legislator in his or her official or individual capacity. Because all the cases on which the landlords rely for the proposition that legislative immunity does not bar individual-capacity claims involved State immunity, not legislative immunity, those cases are inapposite. Because legislative immunity applies to all claims based on conduct that falls within the legislative function, the fact that the landlords asserted their claims against the city officials in their individual capacities does not save them.

### IV. Conclusion

For these reasons, we grant the city officials' petition and direct the circuit court to dismiss the landlords' individual-capacity claims against the city officials. We deny the city officials' petition with regard to the landlords' official-capacity claims.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

17

Parker, C.J., and Shaw, Wise, Sellers, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.