PER CURIAM.
The City of Muscle Shoals ("the City") petitions for a writ of mandamus directing the Colbert Circuit Court to vacate its denial of the City's motion for a summary judgment as to claims asserted against it by Reginald M. Harden stemming from injuries Harden sustained from falling *852 through a grate at Gattman Park, a City-owned park. We grant the petition.
I. Facts
Rusty Wheeles, director of the City's Department of Parks and Recreation ("the Department"), testified by an affidavit attached to the City's motion for a summary judgment that "[t]he City owns and operates Gattman Park. Among the facilities at Gattman Park are five baseball fields with lights mounted on poles." In April 2014, the City accepted a bid from Big River Electric, Inc. ("Big River"), to replace the lights on the poles at the baseball fields at Gattman Park. Big River began replacement of the baseball-field lights in early May 2014. Wheeles testified that in order to perform the job, Big River arranged with the City to have access to a maintenance-shop area in Gattman Park where Big River could store the lights that were going to be installed on the poles at each baseball field. Wheeles also explained:
"The maintenance area is a fenced-off area consisting of a shop with several garages, an office, and a gravel lot with various items of equipment. At the time of [Harden's] accident there was a natural drain covered by a grate located near a group of trees in the gravel parking lot of the maintenance area at Gattman Park. The drain is surrounded by a concrete rim. A metal grate consisting of steel rebar welded together laid inside the concrete rim and covered the drain."
In 2014, Harden was working as an electrician's helper for Big River. On May 7, 2014, Harden was helping John Blair White, foreman for Big River's job of installing the baseball-field lights. White testified by affidavit that, during the afternoon of May 7, he and Harden
"were inside the maintenance shop area on the gravel lot. The lights that were to be installed were contained in boxes and were lined up in rows in the gravel lot near some trees. [Harden] and I had a list of numbers that corresponded to numbers contained on the boxes with the lights. Our job was to select the boxes of lights with the appropriate numbers, load the lights onto the trailer, and take them to the relevant baseball field.
"[Harden] and I were walking down the aisles between the rows of boxes on opposite sides of the boxes when I bent over to uncrate a light. When I looked over in [Harden's] area, he was gone. I walked over to where I last saw [Harden] in the opposite aisle, and I saw him pulling himself up out of a drain hole. I saw that [Harden] had fallen through a metal grate that had been covered by leaves and debris."
For his part, Harden in his deposition stated that before lunch on the day he fell through the grate he and White had made three or four trips delivering light boxes to their specific ball-field locations and that no one noticed the grate during those trips because it was covered with leaves. Harden described the accident as follows:
"A. I was walking down the right side of the aisle [between the rows of boxes]. [White] was walking down the left like we were doing helping each other pick [the box] up from both sides, and all of a sudden, I fell. I was just gone. I was-you know, I've been through OSHA's safety training, and I know how to look for-look for danger on the job. And I was looking for danger, and you could not see that. You could not see that drain.
"Q. So when you say you fell, you fell-are you saying that essentially the grate when you stepped on it broke underneath you?
"A. When I stepped on it, I went straight through.
"Q. Okay. And you hadn't seen it before you stepped on it?
*853 "A. No.
"Q. And as far as you know, nobody working with you saw it before you stepped on it?
"A. No."
Jake Mackey, who had served as the maintenance supervisor for the Department since 1995 and who had worked for the Department since 1975, testified by affidavit that the drain in question "is surrounded by a concrete rim. A metal grate consisting of steel rebar welded together laid inside the concrete rim and covered the drain. This metal grate has been in place for approximately 25 years." Mackey also stated that,
"[i]n the years prior to [Harden's] accident, City employees drove equipment through the gravel lot in the area of the metal grate at least three times per week. In the days prior to the beginning of Big River's job, City employees accessed the maintenance area in order to move equipment out of the way. At no point during this time did any City employee notice anything wrong with the metal grate."
Quinton Bailey, the assistant maintenance supervisor for the Department since 2013 who had also worked for the Department as a laborer from 1995 until his promotion to assistant maintenance supervisor, testified by affidavit that,
"[w]hen I was a laborer from 1995 to 2013, I accessed the gravel lot of the maintenance area on a near daily basis. At no point during that time did I notice anything unsafe about the metal grate. At no point during that time did I become aware of anyone else reporting anything unsafe about the grate."
Wheeles stated in his affidavit that,
"[p]rior to [Harden's] accident, there had been no accidents or injuries resulting from this metal grate. Prior to [Harden's] accident, the City had never received any complaints about the metal grate or any reports that the metal grate was unsafe. Prior to [Harden's] accident, the City had no knowledge of any potential hazard presented by the grate."
Both Mackey and Bailey confirmed in their affidavits that they had "received no reports or complaints about the metal grate prior to [Harden's] accident."
On March 27, 2015, Harden sued the City and multiple fictitiously named parties in the Colbert Circuit Court, alleging that the City was negligent in failing to safeguard Harden from the defective grate and that, as a proximate result of the City's negligence, he was injured. The parties commenced discovery, and the City took Harden's deposition. Harden did not take any depositions. On May 2, 2016, Harden filed an amended complaint in which he added a claim seeking the recovery of benefits under Alabama's Workers' Compensation Act.
On May 13, 2016, the City filed a motion for a summary judgment in which it asserted that it was entitled to dismissal of all claims against it based on the doctrine of municipal immunity recognized in § 11-47-190, Ala. Code 1975. The City also contended it could not be liable for the claim seeking recovery under the Workers' Compensation Act because the City was not Harden's employer.
On October 10, 2016, Harden filed a response in opposition to the summary-judgment motion in which he contended that the common-law doctrines pertaining to premises liability as to business invitees controlled and that under those doctrines he did not have to present evidence that the City had notice that the grate was defective. In support, Harden submitted his deposition and some pictures of the area where the accident occurred and of the grate. Harden did not present any evidence in opposition to the City's summary-judgment *854 motion regarding the grate that contradicted the information provided in the affidavits submitted by Wheeles, Mackey, and Bailey. Harden conceded in his response that the City could not be liable for the workers' compensation claim.
On January 3, 2017, the trial court entered an order granting the City's summary-judgment motion with regard to Harden's claim for benefits under the Workers' Compensation Act but denying the motion with respect to Harden's remaining claims against the City. The order did not provide a rationale for the trial court's judgment.
The City timely filed this mandamus petition on February 14, 2017.
II. Standard of Review
" ' "Subject to certain narrow exceptions, we have held that, because an 'adequate remedy' exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus." ' Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d 959, 966 (Ala. 2011) (quoting Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d 758, 761-62 (Ala. 2002) ). One of the few 'narrow exceptions' we have recognized to the aforesaid general rule is a petition for a writ of mandamus complaining of the denial of a motion to dismiss grounded on a claim of immunity. Ex parte Dickson, 46 So.3d 468, 471 (Ala. 2010) (citing Ex parte Simpson, 36 So.3d 15, 22 (Ala. 2009) )."
Ex parte City of Bessemer, 142 So.3d 543, 549 (Ala. 2013).
" 'Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P., Young v. La Quinta Inns, Inc., 682 So.2d 402 (Ala. 1996). A court considering a motion for summary judgment will view the record in the light most favorable to the nonmoving party, Hurst v. Alabama Power Co., 675 So.2d 397 (Ala. 1996), Fuqua v. Ingersoll-Rand Co., 591 So.2d 486 (Ala. 1991) ; will accord the nonmoving party all reasonable favorable inferences from the evidence, Fuqua, supra, Aldridge v. Valley Steel Constr., Inc., 603 So.2d 981 (Ala. 1992) ; and will resolve all reasonable doubts against the moving party, Hurst, supra, Ex parte Brislin, 719 So.2d 185 (Ala. 1998).
" 'An appellate court reviewing a ruling on a motion for summary judgment will, de novo, apply these same standards applicable in the trial court. Fuqua, supra, Brislin, supra. Likewise, the appellate court will consider only that factual material available of record to the trial court for its consideration in deciding the motion. Dynasty Corp. v. Alpha Resins Corp., 577 So.2d 1278 (Ala. 1991), Boland v. Fort Rucker Nat'l Bank, 599 So.2d 595 (Ala. 1992), Rowe v. Isbell, 599 So.2d 35 (Ala. 1992).' "
Ex parte Turner, 840 So.2d 132, 135 (Ala. 2002) (quoting Ex parte Rizk, 791 So.2d 911, 912-13 (Ala. 2000) ).
III. Analysis
Harden first argues in response to the City's petition that the City cannot raise by mandamus petition the issue whether it is immune from suit under § 11-47-190. Harden notes that generally orders denying motions for a summary judgment must be reviewed by way of appeal. Harden contends that the exception that permits appellate review of petitions for the writ of mandamus that assert an immunity defense-which we reiterated in the "Standard of Review"-"has only been applied to State actors making state *855 and federal claims of Sovereign immunity." Harden argues that, because the City asserts a municipal-immunity defense rather than a defense grounded in state or federal immunity, its only avenue of relief from the trial court's summary judgment is an appeal.
Harden is not correct. This Court in several cases has entertained a mandamus petition where a municipality asserted an immunity defense, including: Ex parte City of Guntersville, 238 So.3d 1243, 1246 (Ala. 2017) ; Ex parte Harris, 216 So.3d 1201, 1216 (Ala. 2016) ; Ex parte Labbe, 156 So.3d 368, 374 (Ala. 2014) ; Ex parte City of Bessemer, 142 So.3d 543, 549 (Ala. 2013) ; and Ex parte City of Tuskegee, 932 So.2d 895, 910 (Ala. 2005). Harden's argument is without merit; the City's petition is properly before us.
As we have noted, the City has invoked immunity from suit under § 11-47-190, which provides, in pertinent part:
"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured...."
(Emphasis added.)
"In a long line of cases, this Court has interpreted th[is] statute to limit municipality liability to two distinct classes. In the first classification, the municipality may be liable, under the doctrine of respondeat superior, for injuries resulting from the wrongful conduct of its agents or officers in the line of duty. In the second classification, the municipality may be liable for injuries resulting from its failure to remedy conditions created or allowed to exist on the streets, alleys, public ways, etc., by 'a person or corporation not related in service to the municipality.' Isbell v. City of Huntsville, 295 Ala. 380, 330 So.2d 607, 609 (1976) ; City of Birmingham v. Carle, 191 Ala. 539, 542, 68 So. 22, 23 (1915). The municipality must have actual or constructive notice of the condition...."
Ellison v. Town of Brookside, 481 So.2d 890, 891-92 (Ala. 1985).
For its part, the City contends that Harden failed to present substantial evidence that one of the two exceptions to municipal immunity from suit recognized in § 11-47-190 applies in this case. In other words, it contends that Harden failed to present substantial evidence that his injuries were the result of some "neglect, carelessness, or unskillfulness" on the part of an agent, officer, or employee of the City, or that the City had any notice of the allegedly defective condition of the grate before the accident occurred.
Harden responds that he did not need to present such evidence because it is undisputed that the City had a duty to maintain in safe condition the grounds of Gattman Park, which is a City-owned park. He then *856 argues that issues regarding breach of that duty, causation, and harm are questions for the jury and that summary judgment would be improper. For this proposition Harden cites Sungas, Inc. v. Perry, 450 So.2d 1085, 1089 (Ala. 1984), in which this Court stated that "the existence vel non of a duty resting upon a defendant is a question of law for the trial judge.... On the other hand, questions regarding breach of that duty, contributory negligence, and proximate cause are ordinarily questions of fact for the jury."[1] Harden therefore argues that the trial court properly denied the City's motion for a summary judgment because, he says, it had been established that the City owed a duty to Harden to keep the subject premises safe.
There are at least two problems with this argument. First and fundamentally, doctrines of immunity shield a government from liability for its action or inaction, often irrespective of the duties it may possess. Consequently, even if the City had a duty to keep Gattman Park in a safe condition for invitees, that determination does not address the issue whether the City is immune from suit under § 11-47-190.
Second, when an issue of fact implicating whether immunity applies in a given case is disputed, then the issue may be submitted to a jury. See, e.g., Ex parte Wood, 852 So.2d 705, 708 (Ala. 2002) ("If there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment. Rule 56, Ala. R. Civ. P."). But the availability of immunity "is ultimately a question of law to be determined by the court." Suttles v. Roy, 75 So.3d 90, 100 (Ala. 2010). Thus, Harden's formulation of the summary-judgment process with regard to immunity is too simplistic.
"[W]here a plaintiff alleges a factual pattern that demonstrates 'neglect, carelessness, or unskillfulness' the plaintiff has stated a cause of action under Ala. Code 1975, § 11-47-190. Whether the plaintiff's allegations state a cause of action and whether the plaintiff has presented substantial evidence creating a genuine issue of material fact can be evaluated by the trial court upon proper motion."
Franklin v. City of Huntsville, 670 So.2d 848, 852 (Ala. 1995) (emphasis added). See also City of Bayou La Batre v. Robinson, 785 So.2d 1128, 1131 (Ala. 2000) (observing that "[t]he allegations of Robinson's complaint relating to the improper use of a fax machine describe conduct that could constitute 'neglect, carelessness or unskillfulness.' Assuming Robinson can present substantial evidence to support this allegation, we must conclude that to allow his claim to proceed would not violate the municipality's immunity granted pursuant to § 11-47-190." (emphasis added) ).
Franklin and Robinson illustrate that Harden is confused as to the elements necessary to qualify for one of the two exceptions to municipal immunity under § 11-47-190. In the face of a properly supported motion for a summary judgment invoking the immunity expressed in § 11-47-190 -and Harden did not contend below nor does he assert in his response to the City's petition that the City's motion *857 was deficient-it is incumbent upon the nonmovant to present substantial evidence of "neglect, carelessness, or unskillfulness" by a municipal agent, officer, or employee, or to present substantial evidence that the municipality had actual or constructive notice of a defect and failed to remedy it and that such negligence or defect caused the plaintiff's injuries.
It is clear that Harden did not present substantial evidence of "neglect, carelessness, or unskillfulness" by City personnel. There is no evidence indicating that a City employee did anything to cause the grate to fail, nor is there any evidence indicating that the City or any employee or agent of the City constructed or installed the grate in the first instance in a negligent manner, or that it had been disturbed in some way by City personnel so as to cause the grate to fail. Nor is there any evidence indicating that the City or its personnel knew or should have known that a steel grate of the nature of the grate at issue would deteriorate to a hazardous state within a 25-year period. To fall within the first exception to municipal immunity prescribed in § 11-47-190, Harden needed to present some kind of evidence indicating that the City knew or should have known that a grate consisting of materials composed in the manner alleged would disintegrate within that time and would need to be replaced. Instead, he offered only supposition and conjecture.[2]
Likewise, there is no evidence indicating that the City had any notice that the grate was, in fact, defective. The City presented evidence from Wheeles, Mackey, and Bailey indicating that the City had never received a complaint about the grate. Mackey specifically testified that for "years prior to [Harden's] accident, City employees drove equipment through the gravel lot in the area of the metal grate at least three times per week," yet no one had ever noticed a problem with the grate. He also related that City employees had accessed the maintenance area at Gattman Park in the week before the accident and that no one had noticed a problem with the grate. Bailey testified that, for the 18 years he worked as a laborer for the Department, he accessed the gravel portion of the maintenance area at Gattman Park "on a near daily basis" and he never noticed a problem with the grate.
Harden also briefly argues in his response to the petition-as he did before the trial court-that he did not need to present evidence of notice of the defective condition of the grate because of the applicability of two common-law exceptions to the notice requirement.[3] The first exception applies when the defective condition is "affirmatively created" by the property owner. The second exception applies when the defect is "part of the premises."
Before we specifically examine these exceptions, we note that Harden's argument ignores the effect that § 11-47-190 may *858 have on the applicability of these exceptions. This Court previously has observed:
"Alabama law has long embraced the common-law doctrine of local-governmental immunity applicable to tort actions against municipalities and counties. Indeed, this Court has explained that the doctrine predates, but survived, the adoption of the 1901 Constitution. Garner v. Covington Cnty., 624 So.2d 1346 (Ala. 1993) ; Home Indem. Co. v. Anders, 459 So.2d 836 (Ala. 1984). It is a doctrine designed to protect local governments and their coffers. See, e.g., Smith v. Schulte, 671 So.2d 1334, 1343-44 (Ala. 1995) (abrogated on other grounds, Ex parte Apicella, 809 So.2d 865 (Ala. 2001) ); Garner, 624 So.2d at 1351. Because it was in fact a common-law doctrine and not created by the constitution, it was and is subject to modification by the legislature. Smith v. Schulte, supra (recognizing 'the unique status' of counties and cities that enables the legislature to regulate their tort liability); Garner, 624 So.2d at 1351. Our legislature has chosen to exercise that control with the enactment, among other statutes, of § 11-47-190, and its predecessors dating back to soon after the adoption of the 1901 Constitution and the debates over municipal liability that occurred at the constitutional convention...."
Ex parte City of Bessemer, 142 So.3d 543, 549-50 (Ala. 2013) (footnotes omitted; emphasis added).
Thus, § 11-47-190 sets the legal standard for when municipal immunity from suit applies and when it does not. See, e.g., Scott v. City of Mountain Brook, 602 So.2d 893, 894 (Ala. 1992) (stating that § 11-47-190"is the pertinent statutory enactment regarding municipal immunity"); Pollan v. City of Dothan, 243 Ala. 99, 101, 8 So.2d 813, 814 (1942) (observing that the identical predecessor to § 11-47-190, Title 37, § 502 (Ala. Code 1940), "prescribes the scope and limit of the liability of municipal corporations"); City of Bessemer v. Chambers, 242 Ala. 666, 669, 8 So.2d 163, 165 (1942) (concluding that "the limitation of liability in [Title 37, § 502 (Ala. Code 1940),] necessarily means to exclude liability on any other account"). In doing so, the statute clearly states that there are only two exceptions to its general rule of immunity. See, e.g., Ex parte City of Bessemer, 142 So.3d at 550 (noting that " § 11-47-190 creates an exception to the general rule of immunity for municipalities ('[n]o city or town shall be liable ... unless') when a plaintiff has suffered injury as a result of 'the neglect, carelessness or unskillfulness' of some agent, or when the plaintiff suffers injury as a result of the 'neglect or carelessness or failure to remedy some defect' in public works caused by a third party"); Ellison , 481 So.2d 890, 891-92 (1985) (quoted supra, 257 So.3d at 855). Therefore, unless Harden's asserted common-law exceptions to the notice requirement somehow fit within the exceptions stated in § 11-47-190, they do not, per se, help Harden.[4]
Because Harden failed to present substantial evidence in response to the City's properly supported motion for a summary judgment-evidence indicating that one of the two exceptions to municipal immunity detailed in § 11-47-190 is implicated in this case-we are forced to conclude that the trial court erred in denying the City's motion.
IV. Conclusion
The City is entitled to immunity from Harden's action under § 11-47-190.
*859 Therefore, we grant the City's petition and order the trial court to vacate its order denying the City's motion for a summary judgment and to enter an order granting that motion.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Parker, Main, Wise, Bryan, Sellers, and Mendheim, JJ., concur.

The statement in Sungas that the existence of a duty is always a question of law for the Court was abrogated in Garner v. Covington Cty., 624 So.2d 1346 (Ala. 1993). In Garner, we noted that this Court has stated that " ' "[w]here the facts upon which the existence of a duty depends, are disputed, the factual dispute is for resolution by the jury." ' " Id. at 1349-50 (quoting Alabama Power Co. v. Brooks, 479 So.2d 1169, 1175 (Ala. 1985), quoting in turn Alabama Power Co. v. Alexander, 370 So.2d 252, 254 (Ala. 1979) ).

To the extent that Harden's argument relies upon the doctrine of res ipsa loquitur, it also fails because " '[t]he owner of a premises ... is not an insurer of the safety of his invitees ... and the principle of res ipsa loquitur is not applicable. There is no presumption of negligence which arises from the mere fact of an injury to an invitee.' " Ex parte Harold L. Martin Distrib. Co., 769 So.2d 313, 314 (Ala. 2000) (quoting Tice v. Tice, 361 So.2d 1051, 1052 (Ala. 1978) ).

In general "[a] landowner owes an invitee a duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn the invitee of defects and dangers that are known to the landowner but are unknown or hidden to the invitee." Prentiss v. Evergreen Presbyterian Church, 644 So.2d 475, 477 (Ala. 1994) (emphasis added).

This is not to say that one or both of Harden's common-law exceptions to the notice requirement might not align with one or both of the exceptions to immunity provided by § 11-47-190.