Rel: January 26, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0395
_____

**Ex parte Triad of Alabama, LLC, d/b/a Flowers Hospital**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Voncille Askew and Don Askew**

**v.**

**Triad of Alabama, LLC, d/b/a Flowers Hospital)**

**(Houston Circuit Court: CV-22-900177)**

SELLERS, Justice.

Triad of Alabama, LLC, d/b/a Flowers Hospital, the defendant below in a pending personal-injury action, petitions this Court for a writ

of mandamus directing the Houston Circuit Court to vacate its order granting a motion filed by the plaintiffs, Voncille Askew and Don Askew, striking Triad's affirmative defense under what the parties refer to as the Alabama COVID-19 Immunity Act ("the ACIA"), Ala. Code 1975, § 6-5-790 et seq. For the reasons set forth below, we grant the petition and issue the writ.

Factual Background

Around August 16, 2021, Triad began providing monoclonal-antibody-infusion therapy at Flowers Hospital to patients infected with Coronavirus, which is commonly referred to as COVID-19. See, e.g., § 6-5-791(a)(4), Ala. Code 1975. According to Triad, it directed those patients to enter the hospital through a preexisting entrance designated as "Infusion entry" to help isolate those patients infected with COVID-19 from the hospital's general population. According to the Askews, that entrance had been created as part of a 2014 construction project and had been frequently used since its creation as an entrance and an exit for both hospital patients and employees. Furthermore, according to the Askews, neither the entrance nor the small, concrete ramp leading up to it had been modified since their creation.

Around September 21, 2021, Voncille Askew was diagnosed with COVID-19, and her physician scheduled her for monoclonal-antibody-infusion therapy at the hospital on the following day. At approximately 12:30 p.m. on September 22, 2021, Voncille proceeded through the "Infusion entry" for her appointment. After undergoing therapy for approximately two hours, Voncille was discharged and instructed to leave through the same "Infusion entry." According to the Askews, as Voncille exited, her foot caught the edge of the concrete ramp, causing her to fall and sustain serious injuries.

<u>Procedural History</u>

On May 10, 2022, the Askews sued Triad, alleging claims of negligence, negligence per se, wantonness, and loss of consortium. In its answers to both the complaint and the second amended complaint, Triad raised the affirmative defense of civil immunity under the ACIA. On February 16, 2023, the Askews moved to strike Triad's affirmative defense, averring that the immunity provisions of the ACIA had no applicability to their claims. Specifically, the Askews asserted that because their "claims ar[o]se from the hospital's negligence in maintaining a safe premises and [its] failure to comply with key safety

3

codes," such claims were not "health emergency claims" for which Triad, even as a covered entity under the ACIA, could be accorded immunity under § 6-5-792(a), Ala. Code 1975. Moreover, the Askews contended that, because "[n]o health care services or treatment were being performed on or provided to [Voncille] at the time of her fall," Triad was not entitled to immunity under § 6-5-794(a), Ala. Code 1975.

On March 7, 2023, Triad responded to the Askews' motion to strike, arguing that, pursuant to the plain text of §§ 6-5-792 and 6-5-794, it was entitled to immunity under both provisions. Nevertheless, on April 20, 2023, the trial court entered an order granting the Askews' motion to strike without having conducted a hearing and without explaining its rationale for granting the motion. Consequently, Triad petitioned this Court for a writ of mandamus. After ordering answers and briefs, we held oral argument on November 1, 2023.

## Standard of Review

The standard for granting mandamus relief is well established:

> "The writ of mandamus is an extraordinary legal remedy. Therefore, this Court will not grant mandamus relief unless the petitioner shows: (1) a clear legal right to the order sought; (2) an imperative duty upon the trial court to perform, accompanied by its refusal to do so; (3) the lack of another

4

adequate remedy; and (4) the properly invoked jurisdiction of the Court."

Ex parte Davis, 930 So. 2d 497, 499 (Ala. 2005) (citations omitted). Moreover, this Court has recognized that "[a] trial court's disallowance of a party's affirmative defense is reviewable by a petition for a writ of mandamus." Ex parte Buffalo Rock Co., 941 So. 2d 273, 277 (Ala. 2006) (citing Ex parte Neely Truck Line, Inc., 588 So. 2d 484 (Ala. Civ. App. 1991)).

When a motion to strike an affirmative defense seeks "a dispositive ruling on the basis of evidence outside the pleadings, we construe it as a motion seeking the entry of a partial summary judgment."[1] Ex parte Teal, 336 So. 3d 165, 167 n.3 (Ala. 2021) (citing Rule 56(a), Ala. R. Civ. P.). Because the order striking Triad's affirmative defense amounted to a partial summary judgment and because no genuine issues of material fact are in dispute, the standard of review is as follows:

> "'An order granting or denying a summary judgment is reviewed de novo, applying the same standard as the trial court applied. American Gen. Life & Accident Ins. Co. v. Underwood, 886 So. 2d 807, 811 (Ala. 2004). In addition, "[t]his court reviews de novo a trial court's interpretation of a statute, because only a question of law is presented." Scott

---

[1]Included in support of the Askews' motion to strike were excerpts from a deposition of Triad's COO, Matthew Blevins.

5

Bridge Co. v. Wright, 883 So. 2d 1221, 1223 (Ala. 2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review. Carter v. City of Haleyville, 669 So. 2d 812, 815 (Ala. 1995). Here, in reviewing the ... summary judgment when the facts are undisputed, we review de novo the trial court's interpretation of statutory language and our previous caselaw on a controlling question of law.'"

McKinney v. Nationwide Mut. Fire Ins. Co., 33 So. 3d 1203, 1206 (Ala. 2009) (quoting Continental Nat'l Indem. Co. v. Fields, 926 So. 2d 1033, 1034-35 (Ala. 2005)).

Discussion

I. Lack of Another Adequate Remedy

Triad contends that, "[b]ecause one of the purposes of immunity is to spare a defendant from the demands associated with defending a drawn-out lawsuit, a defendant wrongfully denied immunity protection has no adequate remedy on appeal if the case is erroneously permitted to go to trial." Petition at 25. This is so, Triad avers, even though it would not be entitled to immunity as to the wantonness claim against it, and thus would still have to litigate that claim, see § 6-5-792(b) and § 6-5-794(a), noting that this Court has previously granted mandamus relief to a defendant, determining that that defendant was entitled to State-agent

immunity as to the claims against her even though the case would proceed on the claims against the other defendants. See Ex parte Mestas, 371 So. 3d 220, 221-22 (Ala. 2022).

Although we agree with Triad that it lacks another adequate remedy, we do not agree with its rationale. A review of our precedents reveals considerable tension between the immunity exception in our mandamus jurisprudence, see, e.g., Ex parte Purvis, 689 So. 2d 794, 795 (Ala. 1996), and the broader concept that mandamus relief is appropriate to permit a disallowed affirmative defense only when that affirmative defense, if successful, would be determinative of the entire action against a particular defendant, see, e.g., Ex parte Tahsin Indus. Corp., U.S.A., 4 So. 3d 1121, 1123-24 (Ala. 2008).

A. The Immunity Exception in Our Mandamus Jurisprudence

This Court has long held that "the general rule is that denial of a summary-judgment motion is not immediately reviewable by an appellate court." Ex parte Wood, 852 So. 2d 705, 708 (Ala. 2002). There exists an important exception, however: The "denial of a motion for a summary judgment grounded on a claim of immunity is immediately reviewable by a petition for a writ of mandamus." Id. (citing Ex parte

7

Purvis, 689 So. 2d at 795) (emphasis added). Although this Court initially created this exception to apply to claims of sovereign (or State) immunity, see Ex parte Purvis, 689 So. 2d at 795, we have since expanded the applicability of the exception to claims of State-agent immunity, see, e.g., Ex parte Rizk, 791 So. 2d 911, 912 (Ala. 2000), qualified immunity, see, e.g., Ex parte Sawyer, 876 So. 2d 433, 439 (Ala. 2003), municipal substantive immunity, see, e.g., Ex parte City of Muscle Shoals, [Ms. SC-2022-0524, Mar. 31, 2023] __ So. 3d __, __ (Ala. 2023), and statutory immunity, see, e.g., Ex parte Dixon Mills Volunteer Fire Dep't, 181 So. 3d 325, 327, 331 (Ala. 2015) (granting in part a mandamus petition based on a claim of immunity under the Volunteer Service Act); Ex parte Tenax Corp., 228 So. 3d 387, 390-91 (Ala. 2017) (granting a mandamus petition premised on a claim of immunity under the exclusive-remedy provisions of the Workers' Compensation Act); Ex parte City of Muscle Shoals, 257 So. 3d 850, 852, 854 (Ala. 2018) (granting a mandamus petition based on a claim of municipal immunity under § 11-47-190, Ala. Code 1975).

Notably, we have reviewed by mandamus petition an order denying a motion for a summary judgment premised on an immunity defense even though that immunity defense, if successful, would not have resolved the

8

action in its entirety against the petitioner. For example, in <u>Ex parte Kelley</u>, 296 So. 3d 822, 826 (Ala. 2019), the petitioners sought mandamus relief from orders denying their motions for a summary judgment predicated on claims of parental immunity. This Court granted their petitions on the basis of parental immunity insofar as the "wrongful-death claims against [them] [we]re based on allegations of negligence," notwithstanding the fact that the wrongful-death claims against them founded on allegations of wantonness would remain to be litigated. <u>Id.</u> at 834. Thus far, however, we have granted mandamus relief in this manner only in the context of orders denying a motion for a summary judgment. When petitioners have requested mandamus relief from a trial court's order merely disallowing their affirmative defenses, however, we have employed a different approach.

B. <u>Mandamus Relief for the Disallowance of Affirmative Defenses</u>

As mentioned previously, this Court has acknowledged that "[a] trial court's disallowance of a party's affirmative defense is reviewable by a petition for a writ of mandamus." <u>Ex parte Buffalo Rock Co.</u>, 941 So. 2d at 277. Thus, we permit mandamus review when a trial court either refuses a defendant's request to amend his or her pleadings to assert an

9

affirmative defense, see, e.g., Ex parte Liberty Nat'l Life Ins. Co., 858 So. 2d 950, 952 (Ala. 2003), or -- as relevant here -- when a trial court grants a plaintiff's motion to strike a defendant's affirmative defense, see, e.g., Ex parte Gadsden Country Club, 14 So. 3d 830, 832 (Ala. 2009). Although, in the context of a trial court's disallowing a party's affirmative defense, we have typically required that that affirmative defense, if successful, be determinative of the entire action against a particular defendant in order to support granting mandamus relief, see, e.g., Ex parte TruckMax, Inc. [Ms. SC-2022-0957, Feb. 17, 2023] __ So. 3d __, __ (Ala. 2023), the importance of addressing questions of immunity does not change depending on the context of how those questions are presented. Thus, we conclude that Triad has no other adequate remedy at law and is entitled to mandamus review.

II. Clear Legal Right

There are two immunity provisions relevant here: § 6-5-792(a) and § 6-5-794(a). Triad states that it is insulated from liability under both sections of the ACIA; the Askews believe that neither section is applicable to Triad.

A. Immunity Under § 6-5-792

10

The ACIA provides, in relevant part, that "a covered entity[2] shall not be liable for any damages, injury, or death suffered by any person or entity as a result of, or in connection with, a health emergency claim that results from any act or omission of the covered entity." § 6-5-792(a). The ACIA further defines a "health emergency claim" as follows:

"Any claim that arises from or is related to Coronavirus. All such claims, no matter how denominated, shall be considered a health emergency claim for purposes of [the ACIA]. The term includes, but is not limited to, any cause of action that is related in any manner to either or both of the following:

"a. The actual, alleged, or feared exposure to or contraction of Coronavirus from the premises of a covered entity or otherwise related to or arising from its operations, products, or services provided on or off-premises.

"b. The covered entity's efforts to prevent or delay the spread of Coronavirus, including, but not limited to, any of the following:

_____

[2]A covered entity includes, among other things, "[a] health care provider." § 6-5-791(a)(5)b., Ala. Code 1975. Included within the ACIA's definition of "health care provider" is "[a]ny health care provider as that term is defined in ... Section 6-5-481(1)-(8)[, Ala. Code 1975]." § 6-5-791(a)(11)a. Thus, a health-care provider encompasses "[s]uch institutions as are defined in Section 22-21-21[, Ala. Code 1975,] as hospitals." § 6-5-481(7). The reference to § 22-21-21 in § 6-5-481(7) appears to be a typographical error; it further appears that the correct reference should be to § 22-21-20(1), Ala. Code 1975. Section 22-21-20(1) defines hospitals as "[g]eneral and specialized hospitals." Therefore, and as both parties agree, Triad, which operates Flowers Hospital, is a covered entity for purposes of the ACIA.

11

"1. Testing.

"2. Monitoring, collecting, reporting, tracking, tracing, disclosing, or investigating exposures or other information.

"3. Using or supplying precautionary equipment or supplies such as personal protective equipment."

§ 6-5-791(a)(13), Ala. Code 1975.

The parties disagree as to the meaning and scope of the above language. Triad argues that because Voncille was at the hospital to be treated for COVID-19, the Askews' negligence claims "arise[] from or [are] related to Coronavirus," and resulted from Triad's actions, and, thus, that those claims were health emergency claims for which it cannot be liable. The Askews view this section much more narrowly. They contend that health emergency claims are only those that either relate to exposure to or contraction of COVID-19 or arise from a covered entity's efforts to prevent or delay the spread of the virus. Furthermore, they opine that any other reading of this section would render §§ 6-5-792(a) and 6-5-794(a) redundant.

1. The Scope of § 6-5-792(a)

Incorporating the definition of "health emergency claim" into the language of § 6-5-792(a) results in the following unambiguous text: "[A] covered entity shall not be liable for any damages, injury, or death suffered by any person or entity as a result of, or in connection with, [any claim that arises from or is related to Coronavirus] that results from any act or omission of the covered entity." Both sides agree that Triad was providing monoclonal-antibody-infusion therapy to COVID-19 patients. Both sides further agree that Triad directed those patients seeking that treatment to enter and exit through an entrance designated "Infusion entry." Accordingly, both sides agree that Triad directed Voncille, in order to receive that treatment, to enter and exit through the "Infusion entry." Finally, both sides agree that Voncille fell and sustained injuries after exiting through the "Infusion entry." Factually, then, Voncille suffered an injury in connection with her seeking treatment for COVID-19 when Triad directed her to enter and exit through a specific entrance devoted exclusively for patients seeking monoclonal-antibody-infusion therapy for COVID-19.

The Askews believe that we cannot reach this conclusion for two reasons. First, they assert that this conclusion relies on too broad an

13

interpretation of the language "[a]ny claim that arises from or is related to Coronavirus." § 6-5-791(a)(13). Instead, they aver that the only claims for which a covered entity may be immune are those claims -- or causes of actions that bear resemblance to those claims -- that are expressly listed under the ACIA's definition of "health emergency claim." Therefore, because, according to the Askews, their negligence claims bear "striking dissimilarity to" the types of claims described in § 6-5-791(a)(13)a.-b., Triad cannot be immune as to those claims. Askews' brief at 7. What the Askews are asking us to do, in so many words, is apply the rule of ejusdem generis to the statute. Under that rule, "where general words or phrases follow or precede a specific list of classes of persons or things, the general word or phrase is interpreted to be of the same nature or class as those named in the specific list." Ex parte Mitchell, 989 So. 2d 1083, 1091 (Ala. 2008) (citing Ex parte McLeod, 718 So. 2d 682 (Ala. 1997)). However, that rule applies only "if the provision in question does not express a contrary intent." Cintech Indus. Coatings, Inc. v. Bennett Indus., Inc., 85 F.3d 1198, 1202 (6th Cir. 1996). As noted earlier, the language preceding the specific examples contained in § 6-5-791(a)(13)a.-b. states that a health emergency claim "includes, but is not

14

limited to," those listed examples. § 6-5-791(a)(13). "Numerous courts have found that the use of the words 'includ[es], but [is] not limited to,' as appear in this clause, reflect such a contrary intent." <u>Cintech Indus. Coatings</u>, 85 F.3d at 1202. Therefore, we reject the Askews' invitation to use the rule of <u>ejusdem generis</u> to narrow our interpretation of the ACIA, and we recognize the sweeping breadth of the language in 6-5-791(a)(13) as expressing the intent of the legislature to grant immunity for "[a]ny claim that arises from or is related to Coronavirus." The statute imposes no limitations on the chain of causation or on the relation between a claim and Coronavirus outside of those limitations inherent to the words "arises from" or "is related to."

> 2. <u>Potential Overlap Between §§ 6-5-792(a) and 6-5-794(a)</u>

Second, the Askews appear to contest a broad interpretation of § 6-5-791(a)(13) on the ground that such an interpretation would make the immunity under § 6-5-792(a) so far reaching in the context of health-care providers as to render immunity under § 6-5-794(a) superfluous. Essentially, the Askews ask us to forgo a plain-language interpretation of the ACIA and to instead rely on the rule against surplusage -- a canon of statutory interpretation that "cautions against needlessly reading a

statute in a way that renders ... certain [provisions] superfluous," <u>Barton v. United States Att'y Gen.</u>, 904 F.3d 1294, 1300 (11th Cir. 2018) -- to narrow the scope of claims as to which a health-care provider is immune. However, "the usual 'preference' for 'avoiding surplusage constructions is not absolute' and ... 'applying the rule against surplusage is, absent other indications, inappropriate' when it would make an otherwise unambiguous statute ambiguous." <u>Id.</u> at 1301 (quoting <u>Lamie v. United States Tr.</u>, 540 U.S. 526, 536 (2004), citing in turn <u>Chickasaw Nation v. United States</u>, 534 U.S. 84, 94 (2001)). Even assuming, for the sake of argument, that our interpretation of §§ 6-5-791(a)(13) and 6-5-792(a) renders § 6-5-794(a) superfluous, when "faced with a choice between a plain-text reading that renders a [provision] superfluous and an interpretation that gives every [provision] independent meaning but, in the doing, muddies up the statute," we "'should prefer the plain meaning since that approach respects the words of [our legislature].'" <u>Id.</u> (quoting <u>Lamie</u>, 540 U.S. at 536). Therefore, we also reject the Askews' invitation to employ the rule against surplusage to narrow our interpretation of the ACIA.

Accordingly, the plain language of §§ 6-5-791(a)(13) and 6-5-792(a) mandate Triad's entitlement to immunity as to the Askews' negligence claims.

### B. Immunity Under § 6-5-794(a)

Because we resolve this dispute under § 6-5-792(a), we pretermit discussion of the question whether Triad is entitled to immunity under § 6-5-794(a).

### Conclusion

For the foregoing reasons, we grant Triad's mandamus petition and issue the writ; the trial court is directed to vacate its order striking Triad's affirmative defense under the ACIA.

PETITION GRANTED; WRIT ISSUED.

Mendheim, J., concurs.

Parker, C.J., and Shaw, Wise, Bryan, and Stewart, JJ., concur in the result.

Mitchell, J., concurs in the result, with opinion.

Cook, J., recuses himself.

MITCHELL, Justice (concurring in the result).

Although Triad of Alabama, LLC, d/b/a Flowers Hospital is entitled to mandamus relief, I disagree with material parts of the main opinion's reasoning. In particular, I believe that the adequate-remedy element of our mandamus test is satisfied on immunity grounds only, thus obviating the need to analyze affirmative-defense grounds. And while I agree that Triad has a clear legal right to immunity on Voncille and Don Askews' negligence claims under what the parties refer to as the Alabama COVID-19 Immunity Act ("the ACIA"), §§ 6-5-790 to -799, Ala. Code 1975, I believe we must acknowledge that the statutory phrase "arises from or is related to" imposes meaningful limitations on what claims are covered by immunity. § 6-5-791(a)(13), Ala. Code 1975. For these reasons, I concur in the result only.

## Adequate Remedy

Unlike the main opinion, I see no tension between our Court's mandamus jurisprudence on immunity and the striking of affirmative defenses. Our Court recognizes the denial of immunity as a standalone reason for seeking mandamus relief, so the procedural posture in which an immunity issue comes to us does not matter. See, e.g., Ex parte

Purvis, 689 So. 2d 794, 795 (Ala. 1996) (granting mandamus review on the denial of a motion to dismiss on immunity grounds); Ex parte Smith, 327 So. 3d 184, 187 (Ala. 2020) (granting mandamus review on the denial of a summary-judgment motion on immunity grounds).  That's because "a defendant wrongfully denied immunity protection has no adequate remedy if the case is erroneously permitted to go to trial," Ex parte Kelley, 296 So. 3d 822, 826 (Ala. 2019); indeed, the whole point of immunity is to "spare a defendant from … defending" against the claim at issue.  Id.  And, as the main opinion recognizes, the solicitude our Court gives to immunity is not limited to State or State-agent immunity; it extends to all kinds of common-law and statutory immunity.  See, e.g., id. (parental immunity); Ex parte Johnson, [Ms. SC-2023-0251, Dec. 15, 2023] ___ So. 3d ___ (Ala. 2023) (self-defense immunity); Ex parte Tenax Corp., 228 So. 3d 387 (Ala. 2017) (Workers' Compensation Act immunity); Ex parte Dixon Mills Volunteer Fire Dep't, 181 So. 3d 325 (Ala. 2015) (Volunteer Service Act immunity).

Because we have recognized that immunity is a "well established" and independent ground for mandamus review, we need not address the circumstances in which the striking of an affirmative defense might also

19

justify such review. Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 632 (Ala. 2020). Therefore, in my view, immunity by itself is a sufficient ground for mandamus review here.

Clear Legal Right

Whether Triad has a clear legal right to mandamus rests on the ordinary meaning of the phrase "arises from or is related to" as found in the ACIA. § 6-5-791(a)(13). If the Askews' claim "arises from or is related to Coronavirus," id., then it is a "health emergency claim" and Triad would be entitled to immunity. § 6-5-792(a), Ala. Code 1975. The disagreement I have with the main opinion is that it does not indicate whether there is any real limit to what claims may be covered by immunity. As I see it -- and as our cases suggest -- the phrase "arises from or is related to" incorporates substantive limitations; I believe we must acknowledge those limitations here.

We have previously encountered phrases similar to "arises from or is related to" in our contract-law jurisprudence. In the context of a jury-trial-waiver provision, we have held that the terms "'arising from' or 'arising under' cover[] only claims requiring a reference to the terms of the contract." Ex parte AIG Baker Orange Beach Wharf, L.L.C., 49 So.

3d 1198, 1203 (Ala. 2010). But adding the phrase "is related to" broadens contracts to cover a wider range of circumstances. See Ex parte Cupps, 782 So. 2d 772, 776 (Ala. 2000); see also Beaver Constr. Co. v. Lakehouse, L.L.C., 742 So. 2d 159, 165 (Ala. 1999) (noting that "'relating-to' language" is "relatively broad").

We have dealt with similar phrasing in arbitration clauses. In that context, to rein in the far-reaching implications of those words, our Court has held that "'there must be some legal and logical nexus' between the dispute and the arbitration provision." State v. Lorillard Tobacco Co., 1 So. 3d 1, 9 (Ala. 2008) (quoting Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc., 745 So. 2d 271, 275 (Ala. 1999)). In other words, the phrase "arises from or is related to" incorporates a causal link, which a reasonable reader would understand to track traditional notions of foreseeability.

Applying these lessons from our cases interpreting contracts, I believe that the phrase "arises from or is related to" in the ACIA carries with it limitations that foreclose immunity for extremely remote or attenuated claims. § 6-5-791(a)(13). That is, for a claim to qualify as a "health emergency claim," it must have some reasonably apparent "'legal

21

and logical nexus'" with Coronavirus. <u>Lorillard Tobacco Co.</u>, 1 So. 3d at 9. Here, the Askews' claims have easily satisfied that test. As the main opinion explains, Triad's decision to designate the relevant entrance for use by Coronavirus patients to mitigate the spread of the illness directly led to Voncille Askew's use of the entrance and her subsequent injury and lawsuit. Thus, the Askews' claims have an obvious "'legal and logical nexus'" with Coronavirus, <u>id.</u>, and qualify as "health emergency claims." § 6-5-791(a)(13). Accordingly, Triad is entitled to immunity on the Askews' negligence claims. § 6-5-792(a).

Interpreting the ACIA without an eye to those limitations is dangerous. As Justice Scalia once noted, the phrase "relate to" is so broad that applying it "according to its terms [is] a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." <u>California Div. of Lab. Standards Enf't v. Dillingham Constr. N.A., Inc.</u>, 519 U.S. 316, 335 (1997) (Scalia, J., concurring). Those limitations are especially important here. Almost every claim made since March 2020 can be traced back to Coronavirus given that the virus and the governmental response affected the entire world for the better part of three years.

***

For these reasons, I concur only in the result granting the petition and issuing the writ of mandamus.