Rel: November 1, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

––––––––––––––––––––––––

## SC-2023-0819

––––––––––––––––––––––––

## Ex parte City of Birmingham, Bryan Smith, and DeAris Richardson

## PETITION FOR WRIT OF MANDAMUS

## (In re: Elisha Atiba Young, individually and as the personal representative of the Estate of Kamerynn Young, a deceased minor; and Breana Young, individually and as mother and next friend of Izabella Young, a minor

### v.

## Procomm Advanced Quality Solutions, LLC; Dusty Cody Martin; City of Birmingham; Bryan Smith; DeAris Richardson; Nissan Motor Company, Ltd.; Nissan North America, Inc.; Nissan

**Technical Center North America, Inc.; and Nissan Design America)**

**(Jefferson Circuit Court, CV-20-901390)**

WISE, Justice.

PETITION DENIED.  NO OPINION.

Parker, C.J., and Shaw, Bryan, Stewart, and Mitchell, JJ., concur.

Cook, J., concurs specially, with opinion.

Sellers and Mendheim, JJ., dissent.

COOK, Justice (concurring specially).

With great reluctance, I concur in denying the petition for a writ of mandamus.

The Birmingham Police Department ("the BPD") has issued a written policy that bars its police officers from pursuing traffic offenders, including drivers fleeing from the police. Specifically, the relevant portions of the policy state that "[o]fficers will not initiate or participate in a vehicle pursuit" when "[t]he decision to pursue is based only on a traffic violation or misdemeanor evading (including failure to yield or reckless driving in response to an enforcement action taken by Department personnel)." (Emphasis added.) This policy appears to be absolute, thus barring pursuit of such fleeing drivers whether it is night or day, dry or wet, crowded or deserted, or on the interstate or side streets.

In my opinion, this absolute policy of not pursuing fleeing drivers is badly misguided, and I am deeply concerned with the degree to which it limits BPD police officers' abilities to apprehend lawbreakers and protect

3

public safety.[1]

It is well established that when police officers attempt to stop actual criminals, those criminals often flee. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight -- wherever it occurs -- is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." (emphasis added)).[2] Although we can never know which criminals have not been apprehended or which additional crimes have been committed as a result of this policy, it does

---

[1]I am not alone in this sentiment. I note that the legislatures of other states have rolled back limitations on police pursuits after some law-enforcement officials argued that "limiting the ability of officers to initiate a pursuit impedes police investigations and emboldens suspected criminals to flee crime scenes before authorities can question them." Ed Komenda, Washington governor rolls back limitations on police chases, Associated Press (May 3, 2023) (at the time of this decision, this article could be located at: https://apnews.com/article/inslee-police-chase-legislation-eba2e7837c33b5a54d93e49507d64bea). As I mention later in this writing, the Alabama Legislature (and not our Court) has the authority to enact such a change.

[2]Why might criminals flee during a traffic stop? Perhaps there is a warrant out for the arrest of a passenger. Or, perhaps there are illegal drugs, a felon in possession of a prohibited firearm, or even a sex-trafficking victim inside of the vehicle. See, e.g., Michael L. Bourke et al., Interdiction for the protection of children: Preventing sexual exploitation one traffic stop at a time, Aggression and Violent Behavior 30 (2016) (at the time of this decision, this article could be located at: https://www.movemag.org/wp-content/uploads/2019/05/IPC-Preventing-Sexual-Exploitation.pdf).

not take much imagination to guess what happens when police officers are forbidden from pursuing the criminals who are fleeing from them.[3] Likewise, we cannot know <u>which</u> additional accidents have occurred because drivers knew that they would not be pursued for violating traffic laws -- even when they were driving 100 miles per hour. However, we can be virtually certain that -- from their own personal experiences and the experiences of their fellow lawbreakers -- the criminals know that the BPD is not pursuing them for traffic offenses, and, as a result, those criminals will act accordingly.

Despite my extraordinary concerns with this policy, our Court's constitutional role is limited in this case. We have no authority to rewrite this policy. Any changes to this policy lie with the City of Birmingham

---

[3]For general background on recent crime issues in Birmingham, <u>see</u> Patsy Douglas, <u>Murder rate on the rise in Birmingham</u>, WVTM13 (Feb. 20, 2024) (at the time of this decision, this article could be located at: <u>https://www.wvtm13.com/article/murder-rate-on-the-rise-in-birmingham/46866997</u>); Carol Robinson, <u>Birmingham's 5 Points South mass shooting: 4 dead, 17 injured; massive manhunt underway</u>, AL.com (Sep. 23, 2024) (at the time of this decision, this article could be located at: <u>https://www.al.com/news/2024/09/shooting-in-birminghams-5-points-south-may-have-mass-casualties-police-say.html</u>); and Emily Palmer, <u>7 Dead, 10 Injured in "Tragic Day" of Gun Violence in Birmingham, Ala.</u>, People (July 15, 2024) (at the time of this decision, this article could be located at: <u>https://people.com/alabama-gun-violence-seven-killed-back-to-back-shootings-8678218</u>).

and the BPD. And, any changes to state law regarding police-pursuit policies (or immunity law) lie with our Legislature. At this stage, our Court's only role is to apply the procedural limitations of mandamus review to the invocation of the well-settled doctrine of peace-officer immunity.

How This Case Arose

On April 1, 2020, Bryan Smith and DeAris Richardson, two officers with the BPD, were in a marked patrol car on a northbound entrance ramp to Interstate 59 ("I-59") in Birmingham when they observed a truck being driven in a highly dangerous and reckless manner. According to them, the driver was traveling at a speed of at least 100 miles per hour and had abruptly cut off a tractor-trailer. Rather than allowing the truck's driver to continue endangering other motorists, the officers -- who are entrusted with the duty to enforce the law and protect the public -- decided to apprehend him, and they attempted to follow the driver as he traveled northbound on I-59.

Officers Smith and Richardson later observed the truck leave I-59 via the Roebuck Parkway exit ramp. The traffic signal was red when the officers got off I-59 at the Roebuck Parkway exit. Both the officers and

the truck's driver stopped at the traffic signal.  According to the officers, at that time, they activated the patrol car's emergency lights but did not engage the sirens.  Officers Smith and Richardson stated that, "[w]hen the traffic signal changed to green, the [truck] accelerated rapidly" and so quickly that they "saw nothing but a cloud of black smoke that came out of the exhaust from the diesel engine."  According to them, although the truck's driver made it through the traffic signal, they did not. Instead, they stopped at the red traffic signal until it was safe to proceed and radioed dispatch, giving dispatch a description of the truck and notifying dispatch that the truck's driver was refusing to stop for them. Officers Smith and Richardson attempted to maintain sight of the truck, but, because of the driver's high rate of speed, they struggled to catch up and ultimately lost sight of the truck.

Shortly thereafter, the police officers discovered a traffic accident at the intersection of Parkway East and Springville Road in Birmingham. The truck's driver had collided with another vehicle and fled the scene. The other vehicle contained a family of four -- two married adults and their two minor children. One of the children died of injuries sustained in the collision. The three other occupants were injured but survived.

There is no denying that this is a tragedy of the first degree.

The fleeing driver was subsequently arrested. At no point did the patrol car driven by the two police officers hit, strike, impact, or make any contact with any vehicle, including the truck operated by the fleeing driver. The parents of the deceased child ("the plaintiffs") later sued, among others, Officer Smith, Officer Richardson, and the City of Birmingham ("the City defendants") in the Jefferson Circuit Court.

The City defendants filed motions for a summary judgment, with evidentiary submissions, addressing the plaintiffs' claims and contending that they were immune from suit. In their opposition to the motion, the plaintiffs argued, among other things, that the City defendants were not entitled to immunity because, they asserted, Officers Smith and Richardson had violated the BPD's policy. After hearing arguments, the trial court denied the City defendants' summary-judgment motions. This petition followed, and our Court ordered answers and briefs.

Are Officers Smith and Richardson Entitled to Peace-Officer Immunity?

The specific issue raised in the present mandamus petition is whether Officers Smith and Richardson and, by extension, the City of Birmingham were entitled to a summary judgment in their favor based

8

on peace-officer immunity. This Court typically does not conduct mandamus review of a trial court's denial of a motion for a summary judgment. See Ex parte Simpson, 36 So. 3d 15, 22 (Ala. 2009). But an exception exists when summary judgment has been sought on immunity grounds. Id. In such cases, we apply a de novo standard of review. See Ex parte Town of Dauphin Island, 274 So. 3d 237, 242-43 (Ala. 2018). A writ of mandamus is an extraordinary remedy that is available to the City defendants only if they establish (1) a clear legal right to peace-officer immunity; (2) that the trial court has refused to enter a judgment in their favor on that basis; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of this Court. See Ex parte KKE, LLC, 295 So. 3d 26, 29 (Ala. 2019). As discussed below, because it appears that a genuine issue of material fact exists as to whether an exception to peace-officer immunity applies in this case, the City defendants cannot establish that they have a clear legal right to mandamus relief.

Police officers are generally immune from tort liability pursuant to Alabama's peace-officer-immunity statute, see § 6-5-338, Ala. Code 1975. That Code section "extends state-agent immunity to peace officers performing discretionary functions within the line and scope of their law-

enforcement duties." <u>Moore v. Crocker</u>, 852 So. 2d 89, 90 (Ala. 2002); <u>see also</u> <u>Hollis v. City of Brighton</u>, 950 So. 2d 300, 309 (Ala. 2006) (incorporating the peace-officer-immunity standard provided in § 6-5-338(a) into the State-agent-immunity analysis found in <u>Cranman</u>).

There are, however, exceptions to peace-officer immunity. Specifically, a peace officer is denied immunity if he or she "acts willfully, maliciously, fraudulently, in bad faith, <u>beyond his or her authority</u>, or under a mistaken interpretation of the law." <u>Ex parte Cranman</u>, 792 So. 2d 392, 405 (Ala. 2000) (plurality opinion adopted by a majority of the Court in <u>Ex parte Butts</u>, 775 So. 2d 173 (Ala. 2000), and <u>Ex parte Rizk</u>, 791 So. 2d 911 (Ala. 2000)) (emphasis added). A peace officer "acts beyond authority and is therefore not immune when he or she <u>'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist</u>.'" <u>Giambrone v. Douglas</u>, 874 So. 2d 1046, 1052 (Ala. 2003) (quoting <u>Ex parte Butts</u>, 775 So. 2d at 178) (emphasis added).

Here, the plaintiffs argue that Officers Smith and Richardson are not entitled to peace-officer immunity because they acted beyond their authority by engaging in a police pursuit that violated the BPD's mandatory policy concerning pursuing traffic offenders. In support of

their claim, they presented the trial court with copies of the BPD's written policy prohibiting "vehicle pursuit" that I quoted above. The plaintiffs also presented the trial court with an internal BPD report that concluded that the pursuit at issue had violated the policy.

In response, the City defendants insist (1) that Officers Smith and Richardson were not in "pursuit," (2) that they had merely activated their lights but not their sirens, and (3) that they were not near the truck when the accident happened. However, the plaintiffs insist that a radio recording of the incident indicates otherwise.

It would appear to me that the BPD's policy (even if I believe it is misguided) qualifies as "'detailed rules or regulations, such as those stated on a checklist.'" Giambrone, 874 So. 2d at 1052. Because there appears to be a question of fact as to whether the police officers violated the policy for the purposes of determining whether peace-officer immunity applies, I reluctantly agree with our Court's decision to deny the City defendants' petition for a writ of mandamus.

However, I write specially to express my view that denying the petition given the circumstances in this case may be inconsistent with the underlying purpose of our peace-officer-immunity doctrine. Here,

11

Officers Smith and Richardson contend that they observed a threat to public safety and made efforts to discharge their duty to protect the public from that threat. In my view, that is precisely the kind of conduct peace-officer immunity is designed to shield.

My observation is also consistent with certain provisions of the Alabama Code that expressly grant police officers the privilege of violating certain Rules of the Road when in pursuit of suspected lawbreakers. For example, § 32-5A-7, Ala. Code 1975, states that "[t]he driver of an authorized emergency vehicle, … when in the pursuit of an actual or suspected violator of the law …, may exercise the privileges set forth in this section," § 32-5A-7(a) (emphasis added), which include (among other things) "[p]roceed[ing] past a red or stop signal or stop sign" and "[e]xceed[ing] the maximum speed limits." § 32-5A-7(b)(2) and (3). However, this exemption applies only if the police officers are using an "audible signal" and a "visual signal." § 32-5A-7(c). So, oddly enough, if the plaintiffs' evidence is to be believed, this exemption could apply in this case.

Even so, the City defendants have not argued that this exemption may apply here. Even if they had, such an argument would not

necessarily establish a "clear legal right" to mandamus relief. In other words, although § 32-5A-7 (at least as presently worded) exempts Officers Smith and Richardson from following certain Rules of the Road, it is less clear if it could exempt them from complying with BPD's written policy governing vehicular pursuits (although I need not, and do not, decide this legal issue today).[4]

_____

[4]Because I agree that a fact issue exists at this stage as to whether an exception to peace-officer immunity applies, I believe that several practical questions will likely arise as this case progresses. For instance, if a disputed question of fact regarding the applicability of an exception to peace-officer immunity remains after the parties have submitted all their evidence at trial, is that fact question one for the jury or the judge to resolve? If it is for the jury to resolve, how should the trial court submit that question to the jury? Should the trial court use special jury interrogatories to resolve the question of fact or would a jury instruction suffice?

I am unaware of any existing Alabama precedent directly addressing how the immunity determination should be made in the rare cases in which the availability of immunity depends on specific factual findings and when a trial has actually occurred. In Ex parte City of Muscle Shoals, 257 So. 3d 850 (Ala. 2018), we generally stated that disputed issues of fact "implicating whether immunity applies in a given case … may be submitted to a jury," id. at 856 (citing Ex parte Wood, 852 So. 2d 705, 708 (Ala. 2002)), but noted that "the availability of immunity 'is ultimately a question of law to be determined by the court.'" Id. (quoting Suttles v. Roy, 75 So. 3d 90, 100 (Ala. 2010)). However, our decision in Ex parte City of Muscle Shoals concerned a summary-judgment proceeding -- the submission of a disputed factual question (that was dispositive of the immunity inquiry) to the jury was not at issue. Although I need not, and do not, reach this issue at this time, I

Other Arguments

The City defendants also argue in their petition that Officers Smith and Richardson's actions did not proximately cause the accident, especially since they did not collide with any vehicles. In support of their argument, they cite this Court's decision in Gooden v. City of Talladega, 966 So. 2d 232, 240 (Ala. 2007), in which our Court stated that "'"[t]he rule governing the conduct of [a] police [officer] in pursuit of an escaping offender is that he must operate his car with due care and, in doing so, he is not responsible for the acts of the offender.'"'" (Citations omitted; emphasis added.) Although proximate cause will likely be an important issue as this case progresses, mandamus is not appropriate for determining an issue relevant to the merits of the underlying tort claims against the City defendants. See Ex parte Hudson, 866 So. 2d 1115, 1120

note that -- in the qualified-immunity context -- federal courts have adopted various approaches to submitting immunity questions to juries when factual disputes are present. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir. 1996) ("Where the defendant's pretrial motions are denied because there are genuine issues of fact that are determinative of the qualified immunity issue, special jury interrogatories may be used to resolve those factual issues."); Swain v. Spinney, 117 F.3d 1, 10 n.3. (1st Cir. 1997) ("[T]he proper division of functions between judge and jury on the objective reasonableness inquiry may be accomplished either through special interrogatories or through carefully structured jury instructions.").

14

(Ala. 2003) (explaining that "[w]e confine our interlocutory review to matters germane to the issue of immunity. Matters relevant to the merits of the underlying tort claim, such as issues of duty or causation, [we leave] to the trial court ....").

In addition to causation, the plaintiffs must, of course, still establish that the City defendants breached the applicable standard of care. However, this issue is not raised in the City defendants' mandamus petition (although it is mentioned in passing in the reply brief). And, like the proximate-cause issue, this issue is also not appropriate for mandamus review. I therefore express no opinion on this issue at this time.

Conclusion

In cases in which other Alabama municipalities have enacted guidelines -- not absolute prohibitions -- on when an officer may engage in such pursuits, our Court has reached the opposite result on the immunity analysis than the one we reach in this case today. See Ex parte Brown, 182 So. 3d 495, 505-06 (Ala. 2015) (finding immunity for police officer engaged in pursuit when City of Fultondale's guidelines allowed officers to exercise discretion in connection with vehicular pursuits and

15

was <u>not</u> an absolute prohibition). However, because of the absolute nature of the pursuit policy enacted by the BPD, I am constrained to concur in denying the petition for a writ of mandamus based on the evidence indicating that Officers Smith and Richardson violated the provisions of this policy. Although I believe that this policy is misguided and the outcome it has produced may be inconsistent with the purpose of our peace-officer-immunity doctrine, I must reluctantly concur with our Court's decision today.